Michael E. DUNN, Administrator of the Estate of Donna Lynn Dunn; Michael E. Dunn, Administrator of the Estate of Emily Raye Dunn; Michael E. Dunn, Administrator of the Estate of Infant Dunn; and Michael E. Dunn, Individually, Appellants,

v.

ROSE WAY, INC.; John Gaylard Smith; Ford Motor Company; Ila R. Plasencia and Jean M. Davis, Appellees.

No. 68019.

Supreme Court of Iowa.

May 18, 1983.

Rehearing Denied June 9, 1983.

Theodore T. Duffield and Jeffrey A. Boehlert, of Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for appellants.

Larry Seckington and Eric F. Turner of Herrick, Langdon & Langdon, Des Moines, for appellees Rose Way, Inc. and Smith.

H. Richard Smith and Randall H. Stefani of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, for appellee Ford Motor Co.

HARRIS, Justice.

This is an interlocutory appeal from a trial court ruling which on defendants' motion dismissed six counts of a tort suit petition. Plaintiff-father brought the suit as a result of a traffic accident that killed his wife, his two-year-old daughter, and his unborn but viable child. We affirm in part, reverse in part and remand.

At the time of the accident Donna Dunn, who was seven and a half months pregnant, was traveling with her two-year-old daughter Emily west on a Des Moines freeway. Donna was driving a 1979 automobile which she and her husband owned. As she approached an exit ramp she saw two cars stopped ahead in the center of the three west-bound lanes. The two cars, driven by defendants Plasencia and Davis, had been involved in a minor collision. Neither car was disabled but both drivers were out of their cars and talking. Donna was either stopped or was slowing to a stop behind the parked cars when a tractor-trailer owned by defendant Rose Way and driven by defendant Smith plowed into the rear of Donna's car. It burst into flames; Donna, Emily, and the unborn child were all killed.

Defendants in this action are Plasencia and Davis (the two drivers), Rose Way (owner of the tractor-trailer), Smith (truck driver), and Ford Motor (manufacturer of Donna's vehicle). Counts III, XI, and XII were brought for the estate of the unborn, but viable child. They seek recovery under Iowa Code § 611.20. Counts VI, XVII, and XVIII were brought by plaintiff as the surviving parent of the unborn child under Iowa R.Civ.P. 8. The latter three counts seek recovery for damages resulting from deprivation of the unborn child's companionship, society, and services.

Our scope of review is most familiar:

A motion to dismiss admits, and is decided solely upon, all facts well pleaded. [Authority.] It is only sustainable when it appears to a certainty the pleader has failed to state a claim on which relief may be granted. [Authority.]

*Peffers v. City of Des Moines,* 299 N.W.2d 675, 677 (Iowa 1980).

The appeal presents two questions of law. Can a wrongful death suit be brought for the death of a viable unborn child? Can a rule 8 claim be brought?

I. In *McKillip v. Zimmerman,* 191 N.W.2d 706, 709 (Iowa 1971), this court interpreted the word "person" in Iowa's survival statute (Iowa Code § 611.20) to exclude an unborn child as one for whom damages are allowable. In *Weitl v. Moes,* 311 N.W.2d 259 (Iowa 1981), the *McKillip* decision and its definition of "person" in section 611.20, were held by a majority of this court to apply to a viable unborn child.

Plaintiff asks us to overrule the *McKillip* decision and, especially, the *Weitl* holding and redefine "person" so as to allow wrongful death recovery for the viable unborn child here. It would unduly extend this opinion and yield little of precedential value to repeat the views of the majority and dissenting opinions in *Weitl.* A majority of the members of this court, not including the author of this opinion, continue to support the majority *Weitl* holding. Accordingly the trial court did not err in dismissing the wrongful death claim of the unborn child under Iowa Code § 611.20.

II. A question not reached in *Weitl* was the right of a parent to recover under Iowa R.Civ.P. 8. The rule provides: "A parent, or the parents, may sue for the expense and actual loss of services, companionship and society resulting from injury to or death of a minor child."

We have distinguished between the recoveries available under the survival statute, § 611.20, and under rule 8:

> The right of action for wrongful or negligent death of another was unknown at common law and exists only by virtue of statute. [Authority.] In Iowa damages recoverable for the death of another are engendered by section 611.20, The Code, (survival statute) and rule 8, R.C.P., (wrongful death of minor).
>
> . . . .
>
> The elements of damage recoverable under the code section and rule 8 are distinct. The rule purports to encompass all damages recoverable by a father acting in his own right and "expense" has been interpreted as having reference to "the reasonable cost incurred for medical attendance, nursing, and the like, including that of suitable burial." [Authority.]

On the other hand the survival statute relates to damages recovered for the minor's estate by an administrator or other legal representative. These latter damages are then distributed among decedent's heirs according to intestate laws.

. . . .

We point out rule 8 is a restatement of section 10986, The Code, 1939. This or a similar statute has been in the Iowa code since the Revision of 1860. Those statutes and now rule 8 are remedial in nature, [Authority] to the extent of prescribing a means or method for obtaining redress for injuries to the father, in certain circumstances to the mother, as a consequence of the death of their unemancipated minor child. Insofar as the rule governs actions by the father seeking compensation on account of injuries to the child not resulting in death, it is perhaps only a codification of the common law.

As indicated at the outset of this division, the wrongful or negligent death of a minor gives rise in Iowa to two causes of action, one on behalf of the minor's administrator for those injuries which are personal to the decedent, section 611.20, the other on behalf of the father for loss of services during minority and expenses incurred on account of those injuries, rule 8. Actions brought under rule 8 are not for the injury to the child but for the injury to the father as a consequence of the injury to the child. [Authority.] *Wardlow v. City of Keokuk,* 190 N.W.2d 439, 442–43 (Iowa 1971).

As the majority opinion in *Weitl* noted, *Wardlow* construed "loss of services" to include companionship and society. The legislature chose to agree; the wording of rule 8 now so specifies. 1973 Iowa Acts ch. 316.

Our decisions plainly establish two points: (1) rule 8 is remedial and should be construed "in the light of current social conditions," *Wardlow,* 190 N.W.2d at 448; *Irlbeck v. Pomeroy,* 210 N.W.2d 831, 833 (Iowa 1973) (rule should be "liberally construed in furtherance of its objects"), and (2) the gist of a rule 8 action is "a wrong done to the parent in consequence of injury to his child by the actionable negligence of another." *Handeland v. Brown,* 216 N.W.2d 574, 578 (Iowa 1974); *Irlbeck,* 210 N.W.2d at 833 ("Actions brought under rule 8 are not for the injury to the child but for the injury to the father as a consequence of the injury to the child."). In *Irlbeck* we also said: "Under rule 8 the parent has a cause of action for a *legal wrong to himself* independent of that of the child." *Id.* (Emphasis added.)

Under the second of these two points neither *McKillip* nor *Weitl* is precedent for the trial court holding on the rule 8 claims. The survival statute and rule 8 serve different functions and compensate different people for different wrongs. Under section 611.20 the wrong is done to the injured person and to that person's estate. Under rule 8 the wrong is done to a child's parents. *See Wardlow,* 190 N.W.2d at 442–43; Note, *Iowa R.Civ.P. 8: Recent Developments,* 24 Drake L.Rev. 203, 203 (1974); Note, *Wrongful Death Damages in Iowa,* 48 Iowa L.Rev. 666, 684 (1963).

Defendants advance several arguments in support of the trial court's ruling. Citing *Weitl,* they argue that an unborn child has no status under Iowa law, an argument

that overlooks the fact that a parent does. They argue that a rule 8 claim would be too speculative both as to causation and damages. *Weitl,* they maintain, draws a bright line that is easy to apply (child must be born for the administrator to recover under § 611.20). But any general denial of liability is easy to apply. The argument really amounts to a general criticism of rule 8 and is not limited to the facts here. Whatever could be said in this regard against the claim of an unborn child could be said as well against the claim of a two-month-old child.

■ Defendants add a linguistic argument, asserting, "minor child" simply does not include an unborn child. The difficulty with this argument is that it depends on which dictionary is used. Webster's New International Dictionary, Third Ed. (1964), defines a child as "an unborn or recently born human being; fetus; infant; baby." This plain definition is not changed by addition of the word "minor." A minor person is simply one who has not yet reached majority, a category which certainly includes unborn persons. According to Webster's International Dictionary the word minor is derived from the Latin (*minororis:* smaller, less, inferior). A consideration of the real meaning of the words minor and child strongly support plaintiff's claim.

The Idaho Supreme Court had no difficulty understanding the plain meaning of these terms. Presented with a similar statute it said:

> The trial court held, and it is contended here, that the cause of action authorized by I.C. § 5–310 for the death of a "minor child" does not extend to nor include a viable, unborn fetus which died of injuries, and hence was never born alive. We disagree. We hold rather, that the term "minor child" marks the upper age limit beyond which a parent's cause of action may not extend under I.C. § 5–310. Parents, under I.C. § 5–310, have a right of action only if their child suffers wrongful death before reaching the age of eighteen. [Authorities.] We hold that a lower age limitation is neither implied nor necessary. An unborn viable child traditionally has legal existence and rights and is easily considered within the meaning of the term "minor child."

*Volk v. Baldazo,* 103 Idaho 570, 573, 651 P.2d 11, 14 (1982).

■ In the final analysis the question must turn on the rule's purpose. In interpreting rule 8 we can and do set completely aside all the philosophical arguments about the status of the unborn. Those arguments are not at issue here. What is involved here is a right of recovery given to a parent. The parent's loss does not depend on the legal status of the child; indeed the absence of the child is the crux of the suit.

It is one thing for the legislature to say that a wrongful death recovery shall accrue to a person's estate. It is quite another to allow a parent to recover when they are deprived of the anticipated services, companionship, and society of a minor child. In the latter situation the deprivation does not necessarily relate to the child's birth. And the parents' loss certainly does not vanish because the deprivation occurred prior to birth. To the deprived parent the loss is real either way.

It is said that to allow recovery under rule 8 would amount to a *de facto* overruling of our majority *Weitl* holding, by allowing indirectly what we directly prohibited in that decision. We think not. The wrongful death claim remains barred by the *Weitl* holding. The father's rule 8 claim calls for consideration of a different theory of recovery. Our interpretation of rule 8 should proceed on the basis of our understanding of its meaning and purpose, and should not be controlled by a preconceived result. This is especially true of any preconceived result that stems from a conclusion we reached when we interpreted a different statute which provided for a different recovery. It is not unknown for the interpretation of a rule to lead to a result that differs, at least superficially, from that expected by reason of a prior holding interpreting some other rule. *Compare Van Meter v. Van Meter,* 328 N.W.2d 497 (Iowa 1983), *with Fundermann v. Mickelson,* 304 N.W.2d 790 (Iowa 1981).

III. The judgment of the trial court dismissing the wrongful death claims under Iowa Code § 611.20 is affirmed. The judgment of the trial court dismissing the claims under rule 8 is reversed. The case is remanded for further proceedings in accordance with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All Justices concur, except McGIVERIN, UHLENHOPP, McCORMICK, and SCHULTZ, JJ., who dissent from Division II.

LARSON, J., joined by REYNOLDSON, C.J., and LeGRAND, Senior Judge, dissent from Division I.

McGIVERIN, Justice (concurring in part and dissenting in part)

I respectfully concur in the result of division I of the majority opinion and dissent as to division II. I would affirm the rulings of the trial court.

I. *The Iowa Code section 611.20 question.* In *McKillip v. Zimmerman,* 191 N.W.2d 706, 709 (Iowa 1971), this court in a unanimous opinion held that the word "person" as used in Iowa Code section 611.20 "means only those born alive." In *Weitl v. Moes,* 311 N.W.2d 259, 270–73 (Iowa 1981), we again adhered to that statutory construction. Since 1971, there has been no legislative change in the wording of section 611.20. Therefore, this court's interpretation of the legislative intent as to the term "person" in section 611.20 has evidently met with the approval of each legislature and under such circumstances the interpretation should not be changed. *Cover v. Craemer,* 258 Iowa 29, 34, 137 N.W.2d 595, 599 (1965). The doctrine of stare decisis should be followed on this issue.

The trial court correctly dismissed the wrongful death claims of the unborn child under section 611.20. Therefore, I concur in the result of division I of the majority opinion.

II. *The rule 8 claim.* Iowa R.Civ.P. 8 states:

A parent, or the parents, may sue for the expense and actual loss of services, companionship and society resulting from injury to or death of a *minor child.* (Emphasis added.)

The majority in division II holds that a surviving parent has a claim under rule 8 for damages resulting from deprivation of an unborn child's companionship, society and services. The majority says that the claim under rule 8 is for wrong done to the parent in consequence of injury to his child. I dissent from such a construction of rule 8. It ignores the plain meaning of the words used in rule 8.

Of great importance are the words which the legislature chose to use in rule 8. The majority focuses on the word "child" which is defined as an "[u]nborn or recently born human being." *Black's Law Dictionary* 217 (rev. 5th ed. 1968). The legislature, however, modified the word "child" with the adjective "minor." Thus a parent's right of recovery under rule 8 is restricted by the limitations which the adjective "minor" places on the word "child."

A "minor" has been defined as a "person." *Black's Law Dictionary* 899 (rev. 5th ed. 1968). The ordinary meaning of the word "person" is a human being who has "attained a recognized individual identity" by being born alive. *Weitl,* 311 N.W.2d at 271. I conclude, therefore, that the modifier "minor" was placed in rule 8 to limit a parent's recovery to the death or injury of a child who was born alive.

Consequently, the initial requirement of the parent's claim under rule 8 that injury or death occur to a "minor child" is not met. The fetus here had not yet been born and there was no "minor child." The injury and death were suffered by a fetus, not a minor child. Thus, the parent could not have a claim under rule 8. *Cf. State v. Beatty,* 61 Iowa 307, 308, 16 N.W. 149, 149 (1883) (defendant charged with bastardy: "Now, as the child was not born alive, there never was any person for whose maintenance defendant could be charged."); *Kansz v. Ryan,* 51 Iowa 232, 234, 1 N.W. 485, 487 (1879) (father could not recover for loss of

services of an unborn child allegedly caused by a third-party's inducing the mother to terminate her pregnancy); *see also Norman v. Murphy,* 124 Cal.App.2d 95, 100, 268 P.2d 178, 179 (1954) (unborn child is not a "minor person" within the meaning of the wrongful death statute); *Stern v. Miller,* 348 So.2d 303, 307 (Fla.1977) (no cause of action for wrongful death of stillborn fetus; decision based on construction of prior statute holding that a fetus was not a "person" or "minor child" for purposes of the wrongful death statute).

I conclude that the use of the modifier "minor" was intended by the legislature as a requirement that a "child" be born alive before it becomes a "minor child" under rule 8.

The trial court's rulings also were correct in dismissing the counts of the petition seeking recovery by plaintiff as the surviving parent of the unborn fetus under rule 8.

UHLENHOPP, McCORMICK and SCHULTZ, JJ., join in this dissent.

LARSON, Justice (concurring in part and dissenting in part).

I concur in Division II. I dissent from Division I because it acquiesces in the *Weitl* holding that a viable unborn child is not a "person" under our survival statute, Iowa Code section 611.20.

*Weitl* places Iowa in the minority of jurisdictions, rapidly diminishing in number, which deny death damages for an unborn child. Moreover, it does not merely stand still in the face of a dramatic trend toward allowing recovery; it actually regresses: While *McKillip* denied recovery for a nonviable child, *Weitl* applied the same rule for a viable one as well.

Ascribing to our 1851 legislature an intent to deny recovery under these circumstances or to assume, under the state of modern medicine, that it would have intended to exclude a viable infant under these circumstances loses sight of the purpose of the statute in the first place. The intent was to ameliorate the harshness of the common law denying recovery for *any*

death. When circumstances change, and our knowledge and experience grow, so must our view of earlier statutes.

> Here the quest is not properly for the sense originally to be *put into it* but rather for the sense which *can be quarried out of it* in light of the new situation. Broad purposes can indeed reach far beyond details known or knowable at the time of drafting. . . .

K. Llewellen, *The Common Law Tradition* 374 (1960) (Emphasis in original.). Other states have recognized this and have interpreted their death statutes accordingly. *See Weitl,* 311 N.W.2d at 275–78 (dissent), where these states are listed.

From a purely legal standpoint, the *Weitl* rule lacks any substantial support. From a common-sense standpoint, it is absolutely indefensible. All religious and philosophical considerations aside, who but lawyers and judges could argue, in *any* context, that an unborn infant capable of life on its own is neither a "person" nor a "child" under the law?

I sense that courts denying recovery for unborn children fear that once we begin to obscure this "bright line" of demarcation provided by birth we will be inextricably drawn into a debate about where a new line should be drawn, or where "life" begins for other considerations. Drawing lines is a part of judging, and we do it all the time.

More important, if there is another line which can be rationally drawn, such as the stage of viability, why not adopt it? It would be fairer, and it would make more sense. "Viability" of an unborn child is no more difficult to determine than is a "live" birth under the *Weitl* rule for, while there is now considerable medical and legal disagreement as to when death occurs, we now have a statute clearly defining viability. *See* Iowa Code § 702.20.

I would overrule *Weitl* and reverse the trial court on this issue.

REYNOLDSON, C.J., and LeGRAND, Senior Judge, join this dissent.