Terri and Kevin O'GRADY, Appellants,

v.

Robert S. BROWN, M.D., Robert A. Slickman, M.D., St. Joseph Hospital and M. Folkers, R.N., Respondents.

No. 64734.

Supreme Court of Missouri, En Banc.

Aug. 16, 1983.

James Bartimus, Kansas City, for appellants.

John M. Kilroy, James W. McManus, Larry L. McMullen, Shirley W. Keeler, Kansas City, for respondents.

Richard S. Brownlee, III, Lori Levine, Jefferson City, amicus curiae.

PUDLOWSKI, Special Judge.

In January of 1979, appellant Terri O'Grady was nine months pregnant with an expected delivery date of January 25, 1979. During her pregnancy she had been under the care of respondent doctors Robert Brown and Robert Slickman; her prenatal course was uneventful. On January 15, 1979, appellant began experiencing severe back pains. She spoke with one of her physicians by telephone and then proceeded to St. Joseph Hospital where she was admitted shortly after midnight.[1] During the course of the 24 hours following Terri O'Grady's admission, her uterus ruptured and the fetus was delivered stillborn.

Appellants contend that Terri O'Grady was not properly monitored, observed, or treated by respondents and that her injuries

and the death of the fetus were the direct result of respondents' negligence. Appellants filed a petition in three counts, seeking recovery in Count I for personal injuries to Terri O'Grady, in Count II for loss of consortium suffered by Kevin O'Grady, and in Count III for damages suffered by both parents by reason of the wrongful death of their unborn child. Respondents filed motions to dismiss or in the alternative for summary judgment. The trial court sustained respondents' motions to dismiss Count III of the petition on the authority of *State ex rel. Hardin v. Sanders*, 538 S.W.2d 336 (Mo. banc 1976), which denied recovery for the death of a viable but unborn child. Counts I and II were voluntarily dismissed by appellants without prejudice, and the trial court certified its order dismissing Count III as a final and appealable order. The Court of Appeals for the Western District affirmed the decision of the trial court. We granted appellants' application for transfer and review the case as if on original appeal. Rule 83.09.

Appellants urge us to reconsider our ruling in *State ex rel. Hardin v. Sanders*, 538 S.W.2d 336 (hereinafter *Hardin*), in which we held that an action for the wrongful death of an unborn fetus could not be maintained under the provisions of § 537.080 RSMo 1969. In *Hardin* we held that a fetus was not a "person" within the meaning of the statute, observing that "if there had been an intention to create such an action it would have been specifically so stated." 538 S.W.2d at 339. In support of this conclusion, we noted in *Hardin* that the United States Supreme Court in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), has stated that a fetus is not a "person" within the protection of the Fourteenth Amendment. We interpreted § 537.080 as requiring the deceased "person" to "be entitled to maintain an action *at the time the injury was sustained* and not at some later time," 538 S.W.2d at 340 (emphasis added), and then concluded it was "obvious" that a fetus could not meet this standard.

1. Appellants Terri and Kevin O'Grady are residents of Kansas but St. Joseph Hospital, a

Missouri resident, is the closest hospital to their home.

Appellants argue that the rule announced in *Hardin* should be reconsidered because it is unduly harsh and not in accord with the result reached in the majority of jurisdictions which have recently considered the issue. Respondents counter that the reasoning of *Hardin* is sound and should not be overruled. They further maintain that the issue presented is one of public policy which would be more appropriately decided in the legislature rather than the courts. The Missouri Hospital Association and the Missouri State Medical Association were granted leave to file briefs as *amici curiae* and their briefs supported the arguments advanced by respondents.

Because the action for wrongful death is statutory, we must first examine the pertinent language of the present Missouri statute, §§ 537.080 to 537.100, RSMo 1978 (1982 Supp.).[2]

Section 537.080 provides, in part, that:

Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for [by certain classes of plaintiffs which are enumerated here.] Provided further that only one action may be brought under this section against any one defendant for the death of any one person.

Section 537.090 provides that: In every action brought under Section 537.080, the trier of the facts may give to the party or parties entitled thereto such damages as the trier of the facts may deem fair and just for the death and loss thus occasioned, having regard to the pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, compan-

ionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death and without limiting such damages to those which would be sustained prior to attaining the age of majority by the deceased or by the person suffering any such loss. In addition, the trier of the facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued. The mitigating or aggravating circumstances attending the death may be considered by the trier of the facts, but damages for grief and bereavement by reason of the death shall not be recoverable.

This language is a significant change from the prior Section 537.090, which provided only for such damages as would "fairly and justly compensate" the plaintiff. *See* Note, 45 Mo.L.Rev. 476 at 482. The earlier provision "was construed to allow recovery only for 'pecuniary' losses. In other words, no recovery was permitted for loss of companionship, society or comfort as a result of the death." (Footnotes omitted). *Id.*, citing *Acton v. Shields,* 386 S.W.2d 363 (Mo.1965). In *Acton* we denied recovery for the wrongful death of a fetus on the ground that the plaintiffs in that case (who were grandparents, aunts and uncles of the unborn child) were unable to show "a reasonable probability of pecuniary benefit" from the continued life of the child. 386 S.W.2d at 366. The new statute explicitly declares the legislature's intention that damages in wrongful death actions should include compensation for the loss of "consortium, companionship, comfort, instruction, guidance, counsel, training, and support." § 537.090 RSMo 1978 (1982 Supp.).

▪▪ Respondents assert that this statute must be "strictly construed" because it is "in derogation of the common law." We

---

**2.** The statute has been changed since the date of the *Hardin* decision. For a discussion of these revisions see Note, "Missouri's New

Wrongful Death Statute—Highlights of Some Significant Changes," 45 Mo.L.Rev. 476 (1980).

do not agree. The wrongful death statute is not, strictly speaking, in "derogation" of the common law. Derogation is defined as "[t]he partial abrogation or repeal of a law, contract, treaty, legal right, etc." or as a "lessening, weakening, curtailment, . . . impairment," detraction or taking away of a power or authority. 3 Oxford English Dictionary 232 (1933). Wrongful death acts do not take away any common law right;[3] they were designed to mend the fabric of the common law, not to weaken it. Remedial acts are not strictly construed although they do change a rule of the common law. *Steggal v. Morris*, 363 Mo. 1224, 258 S.W.2d 577, 582 (1953). We must therefore apply the statutory language "with a view to promoting the apparent object of the legislative enactment." *United Airlines v. State Tax Commission of Missouri*, 377 S.W.2d 444, 451 (Mo. banc 1964).

This principle was recently enunciated in a unanimous opinion authored by Justice Harlan in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In this case a widow of a deceased longshoreman brought an action for his wrongful death contending that although the common law did not provide for wrongful death, the general maritime law did permit such a remedy. She sought reversal of a previous Supreme Court decision which held that absence of a specific statute there is no action for wrongful death and a declaration that the general maritime laws incorporate a wrongful death action.

Justice Harlan in analyzing the trend of federal and state legislative enactments looked at it for guidance. In doing so the Court stated: "These numerous and broadly applicable statutes, taken as a whole, make it clear that there is no present public policy against allowing recovery for wrongful death . . . . This legislative establishment of policy carries significance beyond the particular scope of each of the statutes involved. The policy thus established has become itself a part of the law, to be given its appropriate weight not only in matters of statutory construction but also in those of decisional law," *Id.* p. 390–391, 90 S.Ct. p. 1782. The court then concluded that, "this appreciation of the broader role played by legislation in the development of the law reflects the practices of common law courts from the most ancient times. As Professor Landis has said, 'much of what is ordinarily regarded as 'common law' finds its source in legislative enactment." Landis, Statutes and the Sources of Law, Harvard Legal Essays, 213, 214 (1934). It has always been the duty of the common law court to perceive the import of major legislative innovations and to interweave the new legislative policies with the inherited body of common law principles." *Id.* p. 392, 90 S.Ct. p. 1783.

Our first task, therefore, is to consider whether it would be consistent with the purpose of the statute to permit a cause of action for the wrongful death of an unborn child.

The manifest purpose of our statute is clearly to provide, for a limited class of plaintiffs, compensation for the loss of the "companionship, comfort, instruction, guidance, counsel, . . . and support" of one who would have been alive but for the defendants' wrong. § 537.090. Appellants point out that the loss suffered by parents of an unborn child is in every respect a substantial and genuine loss, which is not distinguishable from the loss suffered when the child dies shortly after birth. To deny recovery based on the arbitrary requirement of live birth would work an injustice, in appellants' view. Furthermore, the wrongful death statute evidences a legislative intent to place the cost of "unsafe" activities upon the actors who engage in them, and thereby provide a deterrent to tortious conduct. The timing of the tortious conduct does not affect either the extent of the child's injuries or the desirability of the defendant's conduct. Comment, "Preconception tort as a basis for recovery," 60 Wash. U.L.Q. 275, 279 (1982). Appellant suggests that there is no substan-

---

**3.** We recognize the argument that the tortfeasor may have lost his immunity to be sued or his privilege not to be sued but he has lost no right by this action.

tial reason why a tortfeasor who causes prenatal death should be treated more favorably than one who causes prenatal injury, with the death of the child following its birth. This would simply perpetuate the much-criticized rule of the common law which made it "more profitable for the defendant to kill the plaintiff than to scratch him." Prosser, Law of Torts § 127 (4th ed. 1971). As Justice Cardozo aptly stated:

Death statutes have their roots in dissatisfaction with the archaisms of the [common-law rule of no liability] .... It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times when uncertain words are to be wrought into consistency and unity with *a legislative policy which is itself a source of law, a new generative impulse transmitted to the legal system.*

*Van Beeck v. Sabine Towing Co.,* 300 U.S. 342, 350–51, 57 S.Ct. 452, 456, 81 L.Ed. 685, 690 (1937), quoted in *Weitl v. Moes,* 311 N.W.2d 259, 276 (Iowa 1981) (Larson, J. dissenting).

Permitting appellant to maintain a wrongful death action for the death of a viable fetus would, therefore, be consistent with the broad purpose for which the statute was passed. Nothing in the language of the statute prevents this conclusion.

▪ Respondents maintain that a fetus cannot be viewed as a "person" within the meaning of § 537.080. We do not agree. We note that the term "person" is used in many disparate senses in common speech, in philosophy, psychology, and in the law; it has no "plain and ordinary meaning" which we can apply. The term must therefore be construed in light of purpose *for which this statute was passed. See generally* Sutherland, Statutory Construction, § 71.05. The relevant inquiry is whether the death of a human fetus is the type of loss for which the legislature intended to establish a remedy. We can discern three basic objectives behind the statute: to provide compensation to bereaved plaintiffs for their loss, to

ensure that tortfeasors pay for the consequences of their actions, and generally to deter harmful conduct which might lead to death. It should be clear that these reasons apply with equal force whether the deceased is born or unborn. Parents clearly have an interest in being protected against or compensated for the loss of a child they wish to have. The fetus itself has an interest in being protected from injury before birth. *See Steggall v. Morris,* 363 Mo. 1224, 258 S.W.2d 577. It follows logically that it should be protected against fatal injuries as well.

▪ The United States Supreme Court in *Roe v. Wade,* 410 U.S. 113, 150, 93 S.Ct. 705, 725, 35 L.Ed.2d 147, 175 (1973), recognized a legitimate societal interest in providing legal protection to the fetus: "in assessing the state's interest recognition may be given to the . . . claim that as long as *potential* life is involved, the state may assert interests beyond the protection of the pregnant woman alone." Fetal interests are presently recognized in several areas of the law. Missouri criminal law, for instance, provides that "[t]he willful killing of an unborn quick child, by any injury to the mother of such child, which would be murder if it resulted in the death of such mother, shall be deemed manslaughter." § 565.026 RSMo 1978. The Missouri abortion statute, § 188.030(3) RSMo 1979 (1982 Supp.) recognizes a state interest in protecting the life and health of a viable fetus.[4] Some state courts have held that the fetus is a "child" for purposes of child neglect statutes. *Matter of Baby X,* 97 Mich.App. 111, 293 N.W.2d 736, 738 (1980); *Hoener v. Bertinato,* 67 N.J.Super. 517, 171 A.2d 140 (1961). A guardian ad litem may be appointed to protect the interests of an unborn child. *Wainwright v. Moore,* 374 So.2d 586 (Fla. App.1979); *Hatch v. Riggs National Bank,* 284 F.Supp. 396 (D.D.C.1968); *contra, Brady v. Doe,* 598 S.W.2d 338 (Tex.Civ.App. 1980). And it is widely recognized that an unborn child has property rights which are entitled to legal protection. *Steggall v.*

---

**4.** The constitutionality of this provision was recently upheld in *Planned Parenthood Association of Kansas City v. Ashcroft,* —— U.S. ——, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983).

*Morris,* 363 Mo. 1224, 258 S.W.2d 577; *see also,* §§ 442.520 and 474.050, RSMo 1978; Note, "The Law and the Unborn Child: The Legal and Logical Inconsistencies," 46 Notre Dame Lawyer 349 (1971). *Roe v. Wade,* while holding that the fetus is not a "person" for purposes of the 14th amendment, does not mandate the conclusion that the fetus is a legal nonentity. "The abortion issue involves the resolution of the mother's rights as against the child when the two are in conflict. Whatever may be the determination of the rights in that context, this special relation gives a third-party tortfeasor no comparable rights." Note, "Torts-Wrongful Death-Unborn Child" 70 Mich.L.Rev. 729, 746–747 (1972).

■ We conclude that the term "person" as used in 537.080 includes the human fetus *en ventre sa mere.* To hold otherwise would frustrate the remedial purpose for which the statute was intended. This conclusion is supported by a strong positive trend among other jurisdictions holding that the fetus is a "person," "minor," or "minor child" within the meaning of their particular wrongful death statutes. Recent decisions include *Dunn v. Rose Way Inc.,* 333 N.W.2d 830 (Iowa 1983); *Volk v. Baldazo,* 103 Idaho 570, 651 P.2d 11 (1982); *Danos v. St. Pierre,* 402 So.2d 633 (La.1981); *Salazar v. St. Vincent Hospital,* 95 N.M. 150, 619 P.2d 826 (App.1980); *Vaillancourt v. Medical Center Hospital,* 139 Vt. 138, 425 A.2d 92 (1980). *See generally* cases cited in Speiser, 1 Recovery for Wrongful Death 2d § 4:35 et seq.; Anno. 15 A.L.R.3d 992; Kader, "The Law of Tortious Prenatal Death since *Roe v. Wade,*" 45 Mo.L.Rev. 639 (1980).

■ Further examining the language of the statute, it is also necessary for us to consider whether the fetus would have been "entitled . . . to recover damages" from the defendant "if death had not ensued." § 537.080. Prior to the 1979 amendment, the statute used the phrase "entitled to maintain an action and recover damages." The *Hardin* decision interpreted this language to require that the injured party be able to "maintain an action" *at the time the injury was sustained.* 538 S.W.2d at 340. As authority for this statement, the

*Hardin* decision cited *Lawrence v. Craven Tire Co.,* 210 Va. 138, 169 S.E.2d 440 (1969), and *Carroll v. Skloff,* 415 Pa. 47, 202 A.2d 9 (1964). Both of those cases held that the critical factor was the deceased person's ability to maintain an action *at the time of death,* not at the time of the injury. Neither rule, in our opinion, reflects a proper interpretation of the phrase "if death had not ensued" as used in § 537.080. The interpretation announced in *Hardin* is in direct conflict with the result reached in *Steggal v. Morris,* 363 Mo. 1224, 258 S.W.2d 577. The deceased person in *Steggal* sustained injuries while still in the womb, was born alive and subsequently died. Recovery was allowed on the basis that the child clearly had the right to maintain a tort action after his birth. 258 S.W.2d at 581. The deceased could not have "maintained an action" at the time of his injury (since he was still in the womb). The rule announced in *Hardin* is similarly not supported by the cases cited in that decision. *Lawrence v. Craven Tire Co.* applied Virginia law which treats the wrongful death action as a survival action. *Carroll v. Skloff* applied Pennsylvania law which similarly conditions availability of a wrongful death action upon qualification under that state's survival statute. Missouri law has emphatically rejected this approach. "The wrongful death act creates a new cause of action where none existed at common law and did not revive a cause of action belonging to the deceased." (Citations omitted). *State ex rel. Jewish Hospital v. Buder,* 540 S.W.2d 100, 104 (Mo.App.1976). The right of action thus created is neither a transmitted right nor a survival right. The plain language of the statute itself does not condition recovery upon the existence of a right to sue at either the time of the injury or the time of death. Instead, it permits an action "[w]henever the death of a person results from any act . . . which, if death had not ensued, would have entitled such person to recover damages in respect thereof . . . ." § 537.-080. We interpret this provision to mean that a cause of action for wrongful death will lie whenever the person injured would have been entitled to recover from the defendant *but for* the fact that the injury

resulted in death. Appellants here have alleged that respondents' negligence resulted in the death of their unborn child. But for the fact that the injuries resulted in death, the child would have been born and "entitled to recover" from respondents. We conclude that the cause of action asserted by appellants does fall within the terms of our statute.

We have examined the decisions of jurisdictions which deny recovery and are not persuaded by their reasoning. *See generally* Speiser, 1 Recovery for Wrongful Death 2d § 4.35 et seq.; Kader, 45 Mo.L.Rev. 639. Some of these decisions are based on statutes which, unlike § 537.080, limit recovery to pecuniary losses, or which are essentially survival statutes. Other decisions reason that proof of causation would be too difficult and too speculative in such cases. As a general principle, we think it unwise for courts to refuse to entertain suits simply because the plaintiff would have difficulty in proving his case. *Steggal v. Morris,* 258 S.W.2d at 580. This reasoning may have been compelling in an era when medical science knew little about fetal development, health, and treatment, but it is untenable in the light of modern knowledge. *See* Note, "The Impact of Medical Knowledge on the Law Relating to Prenatal Injuries." 110 U.Pa.L.Rev. 554 (1962); King, "The Jurisdictional Status of the Fetus: A Proposal for Legal Protection of the Unborn," 77 Mich.L.Rev. 1647 (1979); Speiser, 1 Recovery for Wrongful Death 2d § 4.38.

■ Finally, we must consider respondents' contention that the issue before us is properly one for the legislature and not the courts. Respondents maintain that the legislature has indicated its satisfaction with the *Hardin* decision by amending the statute without replacing or redefining the term "person." We are unwilling to speculate concerning the reasons for the legislature's inaction on this issue, and do not find this reasoning persuasive. We note, however, that the legislature did change the focus of the statute by permitting recovery for loss of society and companionship. Presumably the legislature intended that the courts would construe the statute in a manner which would give effect to this declared purpose. Furthermore, it is significant that the legislature has continued to incorporate common law principles of liability into the statute as the basis of entitlement to an action for wrongful death. This patently indicates that the legislature did not intend to occupy this field of law entirely, leaving no room for judicial development of wrongful death remedies. Compare *Justus v. Atchison,* 19 Cal.3d 564, 565 P.2d 122, 139 Cal.Rptr. 97 (1977). Instead the drafters expected the statutory cause of action to keep pace with developments in the common law. *O'Neill v. Morse,* 385 Mich. 130, 188 N.W.2d 785, 786 (1971). "Any legislative intent to foreclose ... traditional judicial activity should require positive expression." *Justus v. Atchison,* 565 P.2d at 129, 139 Cal.Rptr. at 104 (Tobriner, J., concurring in result). "If the statute carries no such implication, the court has the inherent power to apply the principles announced in the statute." R. Dickerson, The Interpretation and Application of Statutes 201 (1975), quoted in Note, "Wrongful Death and the Stillborn Fetus: A Common Law solution to a Statutory Dilemma," 43 U.Pa.L.Rev. 809, 833 (1982). The issue presented to us is, therefore, properly a matter for judicial decision.

■ We hold, therefore, that § 537.080 does provide a cause of action for the wrongful death of a viable fetus. *State ex rel. Hardin v. Sanders,* 538 S.W.2d 336 (Mo. banc 1976), is hereby overruled. We limit our holding in this case to the facts presented and do not decide whether the same action would lie for the death of a nonviable fetus.[5] The decision below is therefore

---

5. On the viability requirement, *see* 1 Speiser Recovery for Wrongful Death 2d §§ 4.35–4.38; Kader, "The Law of Tortious Prenatal Death Since *Roe v. Wade*" 45 Mo.L.Rev. 639 at 658 et seq.; Hartye, "Tort Recovery for the Unborn Child," 15 J.Fam.L. 279 (1977–78); Note "Torts-Wrongful Death-Unborn Child" 70 Mich.L.Rev. 729, 753 (1972); Del Tufo, "Recov-

ery for Prenatal Torts: Actions for Wrongful Death," 15 Rutgers L.Rev. 61, 68 (1960); Maledon, "The Law and the Unborn Child: The Legal and Logical Inconsistencies," 46 Notre Dame Lawyer 349 (1971); Note, "Wrongful Death and the Stillborn Fetus: A Common Law

reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion. Reversed and remanded.

HIGGINS, GUNN, BILLINGS, BLACK-MAR and DONNELLY, JJ., concur.

RENDLEN, C.J., concurs in result.

WELLIVER, J., not sitting.

Solution to a Statutory Dilemma," 45 U.Pa.L.    Rev. 809, 835 (1982).