

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI EX REL. )
BOB T. BEISLY II, )
                    )
                    )
       Relator, )
                    )
vs.                     )        No. SD32800
                    )
THE HONORABLE TIMOTHY PERIGO, )      **Filed: Jan. 23, 2014**
                    )
       Respondent. )

ORIGINAL PROCEEDING IN PROHIBITION

**PERMANENT WRIT IN PROHIBITION ISSUED**

*(Before Bates, P.J., Burrell, J., and Sheffield, J.)*

PER CURIAM. Three years, six months, and 29 days after Belinda J. Beisly ("Belinda") was murdered, Wilma Jean Irwin ("Irwin")[1] filed a petition against Bob T. Beisly, II ("Relator") and Jeremy L. Maples ("Maples") seeking damages for Belinda's wrongful death. Relator moved to dismiss the claim against him, arguing that the action was barred by the expiration of the three-year statute of limitation on wrongful death

---

[1] Irwin is Belinda's mother.

1

claims. *See* §§ 537.080 and 537.100.[2]  The Honorable Timothy Perigo ("Respondent")

denied Relator's motion.  Relator then petitioned this court to prohibit Respondent from

taking any further action in the case other than to dismiss it with prejudice.  We issue a

permanent writ in prohibition.

## Factual and Procedural History[3]

On July 15, 2009, Belinda was found dead at her residence in Vernon County,

Missouri.[4]  An autopsy established that she died from multiple gunshot wounds, and the

coroner concluded that her death was a homicide.  On February 8, 2013, after a lengthy

investigation, the State of Missouri filed felony charges against Relator and Maples in

---

[2] All statutory references are to RSMo 2000.  As relevant to this case, § 537.080.1 provides:

> Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured . . . .

Section 537.100, in turn, provides:

> Every action instituted under section 537.080 shall be commenced within three years after the cause of action shall accrue; provided, that if any defendant, whether a resident or nonresident of the state at the time any such cause of action accrues, shall then or thereafter be absent or depart from the state, so that personal service cannot be had upon such defendant in the state in any such action heretofore or hereafter accruing, the time during which such defendant is so absent from the state shall not be deemed or taken as any part of the time limited for the commencement of such action against him; and provided, that if any such action shall have been commenced within the time prescribed in this section, and the plaintiff therein take or suffer a nonsuit, or after a verdict for him the judgment be arrested, or after a judgment for him the same be reversed on appeal or error, such plaintiff may commence a new action from time to time within one year after such nonsuit suffered or such judgment arrested or reversed; and in determining whether such new action has been begun within the period so limited, the time during which such nonresident or absent defendant is so absent from the state shall not be deemed or taken as any part of such period of limitation.

[3] The trial court was obligated to "take the statements of fact in the petition as true" in ruling the motion to dismiss, *Plengemeier v. Thermadyne Indus., Inc.*, 409 S.W.3d 395, 400 (Mo. App. E.D. 2013), and as a result, we take our summary of the facts from the amended petition.

[4] Relator and Belinda were married but had been legally separated for a number of years prior to her death.

2

connection with Belinda's death. The State alleged that Maples murdered Belinda by shooting her and that Relator encouraged or aided Maples.

On February 13, 2013, Irwin filed a petition for wrongful death against Relator and Maples. Relator moved to dismiss, arguing that the action was barred by the special three-year statute of limitation applicable to wrongful death claims as the petition was filed more than three years after Belinda's death. *See* § 537.100. In opposing suggestions, Irwin argued that the § 537.100 limitation period did not operate to extinguish her wrongful death claim because Relator and Maples "fraudulently concealed" their roles in Belinda's death. Specifically, she claimed that the pair attempted to evade discovery by using a shotgun which "could not be traced[,]" staging the crime scene to "look like a break in[,]" destroying evidence, denying their involvement, and lying to investigators. Thus, she argued, Relator's and Maples's deliberate efforts to conceal their conduct made it impossible to ascertain their involvement in Belinda's death until more than three years after her death.

On June 6, 2013, Respondent entered an order denying Relator's motion to dismiss. On July 8, 2013, Relator filed his petition for writ of prohibition in this court, asking that we prohibit Respondent from taking any other action in the underlying case other than to dismiss it with prejudice.

**Standard of Review**

"Prohibition is a discretionary writ, and there is no right to have the writ issued." *State ex rel. Linthicum v. Calvin*, 57 S.W.3d 855, 856-57 (Mo. banc 2001). "A writ of prohibition will issue to prevent an abuse of discretion, irreparable harm to a party, or an extra-jurisdictional act and may be appropriate to prevent unnecessary, inconvenient, and

3

expensive litigation." ***State ex rel. Wyeth v. Grady***, 262 S.W.3d 216, 219 (Mo. banc 2008).  A writ is appropriate to prohibit a lower court from proceeding on a claim barred by the applicable statute of limitation. ***State ex rel. Holzum v. Schneider***, 342 S.W.3d 313, 315 (Mo. banc 2011).

### Analysis

Relator argues that a defendant's concealment of his identity or involvement in the death of a decedent does not operate to delay the accrual of a cause of action for wrongful death and does not toll the statute of limitation in § 537.100, citing ***Frazee v. Partney***, 314 S.W.2d 915 (Mo. 1958).

Respondent argues that the Supreme Court's decision in ***O'Grady v. Brown***, 654 S.W.2d 904 (Mo. banc 1983), superseded ***Frazee***, as determined by the western district of this court in ***Howell v. Murphy***, 844 S.W.2d 42, 46 (Mo. App. W.D. 1992).  *See also* ***Boland v. Saint Luke's Health Sys., Inc.***, Nos. WD75364, WD75366, WD75367, WD75484, and WD75485, 2013 WL 6170598 (Mo. App. Nov. 26, 2013).  Because the Western District also distinguished ***Frazee***, legally and factually, in ***Howell*** and ***Boland***, we begin with an analysis of each of these four cases.

***Frazee*** involved two actions for wrongful death arising out of an automobile accident.  314 S.W.2d at 916-17.  The accident occurred when a truck driven by Howard Partney (Partney) swerved into the path of a car occupied by seven members of the Frazee family.  *Id.* at 917.  In attempting to avoid a collision, Warren Frazee lost control of the family's vehicle, his car went down a slope, and it rolled over several times.  *Id.* As a result of the accident, two members of the Frazee family died.  *Id.*  The Frazees claimed that they did not initially know the identity of the driver of the truck.  *Id.*  Warren

4

Frazee testified that he first learned Partney's identity from the Highway Patrol more than seventeen months after the accident occurred. *Id.* Almost two years after the accident, members of the Frazee family filed two separate claims for wrongful death against Partney. *Id.* at 916. Partney asserted the claims were barred by the (then) one-year statute of limitation set forth in § 537.100 RSMo (1949) because the suits had not been filed within one year of the decedents' deaths.[5] *Id.* at 916-17. The trial court found the claims were barred by the statute of limitation and entered judgments in favor of Partney. *Id.* at 917.

The Frazees advanced two principal arguments on appeal. First, they contended that their "causes of action did not accrue until suits could be validly commenced and maintained against an 'actual' defendant[.]" *Id.* at 917. Second, they claimed that Partney's conduct served to toll or extend the period of limitation. *Id.* Their petitions alleged that Partney "'fraudulently, intentionally, deliberately, wilfully [sic], maliciously, and of his spite absented himself and concealed his identity from the plaintiffs and all other persons from and after the 10th day of October, 1954, until the 23rd day of March, 1956.'" *Id.* at 916. The Supreme Court rejected both arguments and held that the Frazees' wrongful death claims were barred by the statute of limitation. *Id.* at 920-21.

Addressing the Frazees' second argument first, the Supreme Court characterized § 537.100 as a special statute of limitation to which the tolling provisions and exceptions in the general statutes governing statutes of limitation in chapter 516 RSMo do not apply. *Id.* at 919. *See also* § 516.300 (providing that the general statutes do not apply to any action that is "otherwise limited by any statute"). The court explained that "[a] special

---

[5] As relevant here, § 537.100 RSMo (1949) provided: "Every action instituted by virtue of sections 537.070 to 537.090, 537.110 and 537.260, shall be commenced within one year after the cause of action shall accrue[.]"

5

statute of limitations must carry its own exceptions and we may not engraft others upon it." *Id.* Thus, while § 516.280 (a general statute) provides for the tolling of a statute of limitation where a person "prevent[s] the commencement of an action" "by absconding or concealing himself, or by any other improper act," this exception does not apply to the limitation period prescribed in § 537.100. *Id.* at 919. Finding that the wrongful death statutes do not provide for the tolling of the statute of limitation due to fraud or concealment, the Court concluded that the alleged conduct of Partney did not toll or extend the limitation period. *Id.* at 919-20.

The Court likewise rejected the Frazees' argument that a cause of action for wrongful death does not accrue until a plaintiff learns the identity of the defendant. *Id.* at 921. The Frazees argued that they could not effectively commence an action because no valid summons could be issued. *Id.* Our high court noted, however, that the limitation period set forth in § 537.100 began to run "from the '*accrual*' of the cause of action, not from the time when one may be effectively commenced." *Id.* The Court observed that a number of its own cases had held that a wrongful death cause of action accrues at death. *Id.* While the Court acknowledged that those cases involved "facts widely different from ours," it further stated, "[W]e do not feel justified in departing from the general principle announced in the absence of supporting authority." *Id.* Adhering to this "general principle[,]" the Court affirmed the trial court's determination that the Frazees' claims were barred by § 537.100. *Id.*

In *O'Grady*, our supreme court was confronted with a very different question. There, Terri and Kevin O'Grady brought a wrongful death action against two physicians for the death of their unborn child. 654 S.W.2d at 906. The trial court dismissed the

6

claim based on *State ex rel. Hardin v. Sanders*, 538 S.W.2d 336 (Mo. banc 1976), a case in which the Court had held that an unborn fetus was not a "person" whose death gave rise to a claim under the wrongful death statute. *Id.* In their appeal, the O'Gradys asked the Court to reconsider its holding in *Sanders*. *Id.* In its analysis, the Court expressly rejected an argument by the respondents that the wrongful death statute should be strictly construed. *Id.* at 908.

> Respondents assert that this statute must be "strictly construed" because it is "in derogation of the common law." We do not agree. The wrongful death statute is not, strictly speaking, in "derogation" of the common law. Derogation is defined as "[t]he partial abrogation or repeal of a law, contract, treaty, legal right, etc." or as a "lessening, weakening, curtailment, . . . impairment," detraction or taking away of a power or authority. 3 Oxford English Dictionary 232 (1933). Wrongful death acts do not take away any common law right; they were designed to mend the fabric of the common law, not to weaken it. Remedial acts are not strictly construed although they do change a rule of the common law. *Steggal v. Morris,* 363 Mo. 1224, 258 S.W.2d 577, 582 (1953). We must therefore apply the statutory language "with a view to promoting the apparent object of the legislative enactment." *United Airlines v. State Tax Commission of Missouri,* 377 S.W.2d 444, 451 (Mo. banc 1964).

*Id.* at 907-08 (footnote omitted). The Court thus endeavored to determine whether a cause of action for the wrongful death of an unborn child was consistent with the purpose of the wrongful death statute. *Id.* at 908-09. The court identified "three basic objectives" for the statute: "[T]o provide compensation to bereaved plaintiffs for their loss, to ensure that tortfeasors pay for the consequences of their actions, and generally to deter harmful conduct which might lead to death." *Id.* at 909. Based on these objectives, considerations of the interests of both the parents and the fetus in protection from injury and death, and other factors, the Court found that the wrongful death statute "does provide a cause of action for the wrongful death of a viable fetus[,]" overruling *State ex rel. Hardin*. *Id.* at 911. *O'Grady* made no reference to *Frazee*.

7

In ***Howell v. Murphy***, 844 S.W.2d 42 (Mo. App. W.D. 1992), the Western District considered the application of § 537.100 to a complex set of facts. There, the plaintiffs filed claims for wrongful death against Robert A. Berdella Jr. ("Berdella") for the deaths of three individuals: Robert Allen Sheldon ("Sheldon"), James Ferris ("Ferris"), and Jerry D. Howell ("Howell"). *Id.* at 43. The plaintiffs filed their petition a few months after Berdella pleaded guilty to murdering Sheldon, Ferris, and Howell. *Id.* at 44-45. Berdella moved for summary judgment on the wrongful death claims, asserting that they were barred by the three-year statute of limitation in § 537.100 because they were filed more than three years after the decedents' deaths. *Id.* at 43-44. In determining the date of the victims' deaths, the trial court relied on Berdella's testimony at his criminal guilty plea hearing, his responses to the plaintiffs' interrogatories, and an affidavit attached to his motion for summary judgment. *Id.* at 44. Outside of Berdella's representations, there was no evidence of when the decedents actually died.[6] *Id.* Based on the dates of death given by Berdella, and relying on ***Frazee***, the trial court concluded that the plaintiffs' wrongful death claims were barred by the three-year statute of limitation and granted Berdella's motion for summary judgment. *Id.* at 45.

---

[6] The bodies of Ferris and Howell were never found. Only parts of Sheldon's body were recovered. The Western District's opinion relates:

> [T]he plaintiffs presented Sheldon's death certificate which reported his date of death to be April 2, 1988, the date authorities found parts of his body, and a presumptive certificate of death issued on December 21, 1988, by the circuit court of Jackson County setting Ferris' date of death as September 27, 1985. They presented evidence that the Sheldons did not know of Sheldon's death until parts of his body were found and that the Howells did not know that Jerry Howell was dead until Berdella testified at his guilty plea on December 19, 1988, to killing him. The plaintiffs also asserted that Bonnie Ferris also assumed [that] her husband [was] alive, though missing, until Berdella's guilty plea, but they presented no competent evidence support[ing] that allegation.

*Id.* at 45.

On appeal, the Western District reversed, holding that the Supreme Court's rejection of strict construction of the wrongful death statute in *O'Grady* represented a "major shift in its interpretation of Missouri's wrongful death statute" that effectively superseded the reasoning of *Frazee*. *Id.* at 46. In addition to concluding that *O'Grady* had superseded *Frazee*, the Western District also distinguished *Frazee* as follows:

> Moreover, the *Frazee* court stated emphatically, "We are not concerned here with any question of the *existence* of either a cause of action, or of parties plaintiff, or of a party defendant; this case presents merely an inability to discover the identity of the defendant." 314 S.W.2d at 921 (emphasis in original). In this case, we are concerned with the question of the existence of a cause of action. We conclude, therefore, that *Frazee* and any other case in which death could not be ascertained do not provide guidance for this case.

*Id.* at 46-47.

Based on *O'Grady*, the Western District considered the legislative purposes for the wrongful death statute in the application § 537.100 to the facts before it. *Id.* at 47. The court found that the granting of Berdella's motion for summary judgment was contrary to the "three basic objectives" of the wrongful death statute, as recognized by the Supreme Court in *O'Grady*, and that such an outcome would "[suggest] that any tortfeasor can escape all civil liability merely by concealing his evil deeds for three years." *Id.* The court therefore held that Berdella's concealment of the victims' deaths had the effect of tolling the period of limitations in § 537.100 "until the plaintiffs could, by reasonable diligence, ascertain that they had an action." *Id.* Having engaged in this rather extensive analysis of *Frazee*, the court ultimately acknowledged it as dicta, concluding "that *Frazee* and any other case in which death could not be ascertained do not provide guidance for this case." *Id.* at 46-47.

9

The Western District again took up a question of the effect of concealment under the provisions of § 537.100 in *Boland v. Saint Luke's Health Sys., Inc.,* Nos. WD75364, WD75366, WD75367, WD75484, and WD75485, 2013 WL 6170598 (Mo. App. Nov. 26, 2013). There, separate plaintiffs brought five wrongful death suits against three corporate defendants associated with a medical center. *Id.* at *1. The plaintiffs alleged that a respiratory therapist working at the medical center killed the five decedents by administering lethal doses of medication. *Id.* They further alleged that the defendants, after gaining knowledge of the events and circumstances, "intentionally concealed" the respiratory therapist's activities, breached their duty to notify the decedents' families, and "affirmatively acted to conceal from [the plaintiffs] the existence of a [wrongful death] claim." *Id.* at *1, *4. In response, the defendants moved for judgment on the pleadings on the ground that the claims were barred by the three-year limitation period in § 537.100. *Id.* at *1. The trial court granted the defendants' motions for judgment on the pleadings. *Id.*

On appeal, the plaintiffs argued that the defendants' concealment and failure to disclose the circumstances of the decedents' deaths had the effect of tolling the statute of limitation in § 537.100. *Id.* at *5. Alternatively, they argued that their causes of action did not accrue under the wrongful death statute until they could reasonably ascertain the cause of death of the decedents. *Id.* The Western District first noted that the two arguments presented distinct issues:

> Accrual is defined as "when the right to sue arises." *Chambers v. Nelson,* 737 S.W.2d 225, 226 (Mo.App.E.D.1987) (citing *Hunter v. Hunter,* 361 Mo. 799, 237 S.W.2d 100, 103 (1951)). Accrual also marks the time when an applicable statute of limitations begins to run. *Chambers,* 737 S.W.2d at 226 (citation omitted). Tolling provisions, on the other hand, "interrupt [ ] the running of a statute of limitations in

10

certain situations." BLACK'S LAW DICTIONARY (Thompson Reuters, 9th
ed.2009). *See also, e.g., Corrales v. Murwood, Inc.,* 232 S.W.3d 609,
612–14 (Mo.App.E.D.2007). Thus, while every cause of action has a time
of accrual, not every cause of action will be subject to tolling. Further, if
the cause of action has never accrued, there is nothing to toll, because an
event or circumstance cannot "interrupt" that which has never started.

*Id.* The court did not address the tolling argument because it concluded that the

plaintiffs' causes of action "did not accrue until the wrongful nature of the deaths were

known or reasonably discovered by a diligent plaintiff[.]" *Id.* at *6. In so holding, the

court acknowledged that prior cases, including *Frazee*, generally have stated that claims

for wrongful death accrue upon death. *Id.* The Western District noted, however, that the

wrongful death statute does not expressly provide that a claim accrues upon death. *Id.*

Further, the court found under the facts before it that such a reading would be

inconsistent with *O'Grady*'s "mandate that, in order to promote the purpose and

objectives of the Wrongful Death Act, the Act shall not be strictly construed." *Id.* The

Western District found *Frazee* to be "inapplicable" for several reasons, including that it

was "nullified by *O'Grady*, in which the Supreme Court mandated a liberal interpretation

of the Wrongful Death Act." *Id.* at *9.

Although we recognize the public policy attraction of a broad interpretation of

*O'Grady*, and the Western District's attempts to distinguish *Frazee* in *Howell* and

*Boland*, we do not feel at liberty to follow a similar track in the instant case. As an initial

matter, we note that *Howell* and *Boland* are factually and legally distinguishable from

this case. In *Howell*, the actual dates of the decedents' deaths were unknowable to

anyone other than the defendant, and although the defendant made representations

concerning the dates of their deaths, his credibility was problematic, at best. 844 S.W.2d

at 45. Moreover, the plaintiffs were unaware of the decedents' deaths for some time after

they occurred. *Id.* The evidence supported the plaintiffs' claims that they did not have actual knowledge of one or more of the decedents' deaths until the defendant pleaded guilty to the murders. *Id.* These facts led the Western District to characterize the issue in the case as a "question of the existence of a cause of action[,]" which it distinguished from the issue addressed in *Frazee*. *Id.* at 46. Similarly, *Boland* involved a question as to the plaintiffs' knowledge of the existence of a cause of action in that the plaintiffs were unaware of the suspicious nature of decedents' deaths or of the respiratory therapist's actions until well after the deaths had occurred. 2013 WL 6170598 at *5. Thus, although the plaintiffs knew of the deaths, they claimed they lacked sufficient information to know that the deaths were wrongful. *Id.*

Unlike *Howell* and *Boland*, this case presents no issue concerning the claimant's timely knowledge of: (1) the fact of Belinda's death; (2) the date of Belinda's death; or (3) the suspicious nature – *i.e.*, the wrongfulness – of Belinda's death. Instead, the issue here closely resembles that present in *Frazee* -- "merely an inability to discover the identity of the defendant." 314 S.W.2d at 921.

Further, we do not agree with the Western District's conclusion that *O'Grady* superseded *Frazee* for three principal reasons. First, the two cases are factually and legally dissimilar. *O'Grady* was concerned with whether a claim for the wrongful death of an unborn child could be maintained under the wrongful death statute. 654 S.W.2d at 906. It did not involve any question concerning the application of § 537.100 -- the sole focus in *Frazee*.

Second, the Supreme Court's application of § 537.100 in *Frazee* does not strike us as inherently inconsistent with *O'Grady*'s purpose-oriented construction of the wrongful

death statutes. Our high court did not purport to employ strict construction in resolving *Frazee*. On the contrary, the Court expressly stated, "In the final analysis we are seeking here to determine the legislative intent."[7] 314 S.W.2d at 920. The fact that the Court concluded that the plaintiffs' claims were barred by § 537.100 does not mean that its interpretation was fundamentally inconsistent with the legislative purpose for the wrongful death statutes. By enacting § 537.100, the legislature clearly intended to place time limits on actions for wrongful death.

Third, and perhaps most importantly, *O'Grady* did not expressly overrule *Frazee*. In fact, *O'Grady* makes no mention of *Frazee* at all. Thus, in order to conclude that *O'Grady* superseded or overruled *Frazee*, we must find that it did so implicitly, or *sub silentio*. This we cannot do. In *State v. Honeycutt,* No. SC92229, 2013 WL 6188568 (Mo. banc Nov. 26, 2013), the Supreme Court rejected an argument that it had implicitly overruled a prior decision, *sub silentio*, stating:

> Generally, this Court presumes, absent a contrary showing, that an opinion of this Court has not been overruled *sub silentio*. *See Badahman v. Catering St. Louis,* 395 S.W.3d 29, 37 n. 10 (Mo. banc 2013). *Sub silentio* is defined as "without notice being taken or without making a particular point of the matter in question." *Webster's Third New*

---

[7] *Frazee*'s assessment of legislative intent is notable:

> In the final analysis we are seeking here to determine the legislative intent. We must consider not only the fact that our legislature has, in twice adding specific exceptions to the time limitation of our death act, failed to enact any exception which would extend the time by reason of such conduct as is shown here, but also the fact that § 516.300, which has at all times remained in force, specifically provides that the general statutes of limitations shall not extend 'to any action * * * otherwise limited by any statute.' We must further consider the various judicial constructions of these statutes, which have entered into and become part of them. We must and do hold that the limitation of one year specifically provided in § 537.100 was not tolled or the period extended by the defendant's conduct, even attributing to it the full effect of plaintiffs' contentions.

*Id*. We observe that in the many years since the *Frazee* decision, the legislature still has not acted to create an exception to the special statute of limitation in § 537.100 for fraud or concealment, though it has amended the statute for other purposes, including lengthening the limitation period.

13

*International Dictionary* 2279 (1976). "If the majority chooses to overrule [a case] it is far preferable to do so by the front door of reason rather than the amorphous back door of *sub silentio*." *Keller v. Marion Cty. Ambulance Distr.,* 820 S.W.2d 301, 308 (Mo. banc 1991) (Holstein, J., dissenting). This presumption can be traced, at least in part, to the doctrine of *stare decisis*. "The doctrine of *stare decisis*—to adhere to decided cases—promotes stability in the law by encouraging courts to adhere to precedents." *Med. Shoppe Int'l, Inc. v. Dir. Of Revenue,* 156 S.W.3d 333, 334–35 (Mo. banc 2005). Under the doctrine of *stare decisis*, decisions of this Court should not be lightly overruled, especially when "the opinion has remained unchanged for many years." *Sw. Bell Yellow Pages, Inc. v. Dir. Of Revenue,* 94 S.W.3d 388, 391 (Mo. banc 2002).

Importantly, "[t]he maxim of stare decisis applies only to decisions on points arising and decided in causes" and does not extend to mere implications from issues actually decided. *Broadwater v. Wabash R. Co.,* 212 Mo. 437, 110 S.W. 1084, 1086 (Mo.1908). To assert that a decision has been overruled *sub silentio* is the same as to assert that the decision has been overruled by implication. This Court's presumption against *sub silentio* holdings, therefore, is based not only on the general preference that precedent be adhered to and decisions be expressly overruled, but also because the implicit nature of a *sub silentio* holding has no *stare decisis* effect and is not binding on future decisions of this Court.

*Id*. at *8-*9. As this passage clearly shows, our high court continues to maintain a presumption against the *sub silentio* overruling of a prior case. This presumption requires us to conclude that **O'Grady** did not overrule or supersede **Frazee**, implicitly or otherwise, inasmuch as there is no showing to the contrary. This conclusion is reinforced by the fact that the two cases address very different legal questions.

Turning to Relator's petition, we discern no meaningful distinction between **Frazee** and this case in terms of the legal issues presented. In **Frazee**, the plaintiffs alleged they were unable to discover the identity of the defendant until more than one year after the decedents' deaths due to the defendant's concealment of his identity. Our supreme court concluded that the Frazees' allegations of concealment, even if true, did not delay the accrual of their cause of action for wrongful death beyond the decedents' deaths and did not toll the period of limitation set forth in § 537.100. 314 S.W.2d at 920-

14

21. Here, Irwin alleges that she could not ascertain that Relator and Maples were involved in or responsible for Belinda's death within the three-year period after her death because the pair concealed their involvement. As in *Frazee*, the legal issues presented in this case are whether Relator's and Maples's efforts to conceal their involvement (assuming the allegations in Irwin's petitions to be true) effectively either delayed the accrual of their cause of action for Belinda's wrongful death or tolled the three-year limitation period contained in § 537.100. In our view, *Frazee* answers these questions in the negative.

"[W]e are constitutionally bound to follow the most recent controlling decision of the Supreme Court of Missouri." *Board of Dirs. of Richland Township v. Kenoma, LLC*, 284 S.W.3d 672, 677 (Mo. App. S.D. 2009). Having found that *O'Grady* did not supersede or overrule *Frazee*, we conclude that *Frazee* is the last controlling decision of our supreme court on the issues presented in this case. In accordance with *Frazee*, we find that even if Irwin were successful in proving her allegations of misconduct and concealment by Relator and Maples, these facts would not change the date the cause of action for Belinda's wrongful death accrued, and they would not operate to toll the period of limitation set forth in § 537.100. As such, we are compelled to find that Irwin's claim is barred by § 537.100 as it was brought more than three years after Belinda's death.

We therefore enter a permanent writ that prohibits Respondent from taking any further action on Irwin's claim against Relator in Jasper County Case No. 13AP-CC00037 other than to dismiss the same for the reason that the claim is time-barred by § 537.100.

15