

# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel. BOB T. BEISLY II, )
                    Relator, )
                     )
vs. )      No. SC94030
                     )
THE HONORABLE TIMOTHY )
PERIGO, )
                     )
              Respondent. )

## ORIGINAL PROCEEDING IN PROHIBITION

### Opinion issued August 18, 2015

Bob T. Beisly II (hereinafter, "Relator"), the defendant in the action below, seeks a writ of prohibition to prevent the circuit court from taking any further action in Wilma Jean Irwin's (hereinafter, "Irwin") wrongful death suit, other than to dismiss it with prejudice. Relator contends Irwin's suit is time-barred by section 537.100, RSMo 2000.[1] This Court holds the circuit court did not abuse its discretion in overruling Relator's motion to dismiss because the doctrine of equitable estoppel forecloses Relator from relying on the statute of limitations as an affirmative defense due to the fraudulent concealment of his wrongdoing. The preliminary order in prohibition is quashed.

---

[1] All statutory references are to RSMo 2000.

**Factual and Procedural History**

On July 15, 2009, Relator's estranged wife, Belinda Beisly (hereinafter, "the decedent"), was found dead inside her home from multiple gunshot wounds to her head and chest. Her death was ruled a homicide. Decedent's homicide remained unsolved until February 8, 2013, when the state charged Relator and Jeremy Maples (hereinafter, "Maples") with the decedent's murder. The felony complaint alleged Maples committed first-degree murder by shooting decedent, and it charged Relator with aiding and encouraging Maples in committing the decedent's murder.

On February 13, 2013, Irwin, the decedent's mother, filed a wrongful death action against Relator and Maples. Irwin alleged Maples shot and killed the decedent in exchange for money received from Relator. Irwin's petition further alleged Maples and Relator kept their arrangement from being discovered from law enforcement and the decedent's family by: (1) disguising the nature of the decedent's death by staging it to look like a home invasion and using a weapon that could not be traced; (2) lying to law enforcement; (3) destroying evidence; and (4) denying their involvement in the decedent's death.

Relator filed a motion to dismiss Irwin's petition, arguing her claim was time-barred by section 537.100, the wrongful death statute of limitations, because it was filed more than three years after the decedent's death. Irwin filed suggestions in opposition, arguing Relator and Maples fraudulently concealed their wrongdoing as alleged in her petition. Irwin stated this conduct made it impossible for her to identify perpetrators and name defendants, which were prerequisites to maintaining a civil suit. Irwin also alleged

Relator and Maples should be estopped from relying on the statute of limitations as a defense due to their fraudulent concealment of their wrongdoing.

The circuit court acknowledged the general rule that a wrongful death action accrues when the decedent dies. However, the circuit court found it should not construe the wrongful death statutes so strictly so as to avoid their purposes. The circuit court overruled Relator's motion, reasoning that to allow the wrongdoers to escape civil liability on the basis of the statute of limitations in this case was "shocking to the conscience."

Relator sought a writ of prohibition in the court of appeals. After opinion by that court, this Court granted transfer pursuant to Mo. Const. art V, sec. 10.

## Standard of Review

This Court has jurisdiction to issue original remedial writs. Mo. Const. art. V, sec. 4. "Prohibition is a discretionary writ that only issues to prevent an abuse of judicial discretion, to avoid irreparable harm to a party, or to prevent exercise of extrajurisdictional power." *State ex rel. Schwarz Pharma, Inc. v. Dowd*, 432 S.W.3d 764, 768 (Mo. banc 2014). A writ of prohibition "is the appropriate remedy to prevent a lower court from proceeding on an action barred by the statute of limitations." *State ex rel. Holzum*, 342 S.W.3d 313, 315 (Mo. banc 2011).

## Wrongful Death Statute of Limitations

Relator argues he is entitled to a writ of prohibition that will prohibit the circuit court from taking any further action in the underlying case other than to enter an order dismissing Irwin's suit with prejudice, because the action is time-barred by section

3

537.100. Relator claims none of the tolling provisions in section 537.100 apply to Irwin's cause of action.

Section 537.080.1 sets forth the cause of action for wrongful death and delineates who is entitled to sue for damages. Section 537.100 states that every action brought pursuant to section 537.080 "shall be commenced within three years after the cause of action shall accrue." Section 537.100 contains explicit tolling exceptions: (1) if the plaintiff is unable to serve an absent defendant with service of process and (2) if the plaintiff files a voluntary non-suit or if the plaintiff's judgment is reversed and remanded on appeal. These exceptions do not apply to toll Irwin's cause of action.

Irwin argues Relator's success at concealing his wrongdoing caused the accrual of her wrongful death claim to be delayed. Irwin claims she was unable to file suit until she discovered who was responsible for the decedent's death, and this did not occur until Relator and Maples were arrested for the decedent's murder.

### *Accrual Distinct from Tolling*

The terms "accrual" and "tolling" are distinct legal principles that often produce the same outcome. Generally, "[a] cause of action accrues … when the right to sue arises." *Hunter v. Hunter*, 237 S.W.2d 100, 103 (Mo. 1951). Accrual also triggers the running of the statute of limitations. *Id*. Tolling, on the other hand, occurs when a party shows facts that act to remove or interrupt the bar of the statute of limitations to a cause of action. 2 Mo. Practice Series, *Methods of Practice: Litigation Guide*, §5.9 (4th ed. 2002). Thus, while every cause of action has a time of accrual, not every cause of action

4

is subject to tolling.  Further, if a cause of action has not accrued, there is nothing to toll, because an event or circumstance cannot interrupt or remove that which has never started.

*Accrual and Wrongful Death Actions*

"In determining whether an applicable statute of limitation bars recovery, it is necessary to establish when that cause of action accrued." *Jepson v. Stubbs*, 555 S.W.2d 307, 311 (Mo. banc 1977).  Section 537.100 does not define "accrue" for purposes of the wrongful death statute of limitations.  In *Coover v. Moore*, 31 Mo. 574, 576 (Mo. 1862), this Court stated the cause of action under the wrongful death statute accrued "at the death."  In *Kennedy v. Burrier*, 36 Mo. 128 (Mo. 1865), this Court explained more fully:

> We think the cause of action accrued whenever the defendant's liability became perfect and complete. Whenever the defendant had done an act which made him liable in damages, and there was a person *in esse* to whom the damages ought to be paid and who might sue for and recover the same, then clearly the cause of action had accrued as against him.  When, then, did this liability take place?  Evidently at the death of [decedent] … and the statute commenced running from that time.

*Kennedy*, 36 Mo. at 130.  *See also Cummins v. Kansas City Pub. Serv. Co.*, 66 S.W.2d 920, 929 (Mo. banc 1933) (finding the statute provides for one cause of action that accrues at the time of death), and *Nelms v. Bright*, 299 S.W.2d 483, 487 (Mo. banc 1957) (accord).

This Court addressed the issue of whether a wrongful death cause of action accrued and caused the statute of limitations to begin to run at the time of death or upon the discovery of the identity of the alleged tortfeasor in *Frazee v. Partney*, 314 S.W.2d 915 (Mo. 1958).  In *Frazee*, a family was involved in an accident caused by another

5

vehicle swerving into its lane when the driver fell asleep at the wheel in October 1954. There was no contact between the cars, but the family's car went down an embankment and overturned several times. The mother and one of the children died as a result of the accident. The other driver did not stop immediately and, when he did, he did not see anyone, so he continued on his way, unaware there had been an accident. The family did not learn the driver's identity until March 1956. *Frazee*, 314 S.W.2d at 917.

The family filed a wrongful death suit against the driver in September 1956. The petition alleged the defendant "fraudulently, intentionally, deliberately, willfully, maliciously, and of his spite absented himself and concealed his identity from the plaintiffs and all other persons …" from the time of the accident until March 1956. The driver argued the family's suit was barred by the statute of limitations, which at that time was one year. This Court addressed two issues: (1) whether the driver's acts operated to toll or extend section 537.100's limitations period and (2) when the family's cause of action accrued. *Id*. at 917.

With respect to tolling, this Court determined the wrongful death statute contained a special statute of limitation. Accordingly, section 516.280's fraudulent concealment tolling provision did not apply. *Id*. at 919. This Court explained, "This [C]ourt has uniformly held that where a statute of limitation is a special one, not included in the general chapter on limitations, the running thereof cannot be tolled because of fraud, concealment or any other reason not provided in the statute itself." *Id*. (quoting *State ex rel. Bier v. Bigger*, 178 S.W.2d 347, 351 (Mo. banc 1944)). In reaching this conclusion, this Court also examined the legislature's intent, including the fact that the legislature had

6

twice enacted specific tolling exceptions in the wrongful death statute, but those exceptions did not extend to the driver's fraudulent concealment conduct. *Id*. at 920.

In addressing the family's argument that its cause of action did not accrue until it learned the identity of the wrongdoer, this Court recognized the case turned on an inability to discover the identity of the defendant and not on the existence of a cause of action. *Id*. While this Court was cognizant of the family's difficulty in serving an unknown defendant, this Court stated, "We are construing the positive terms of a statute which starts the limitation in motion from the '*accrual*' of the cause of action, not from the time when one may be effectively commenced." *Id*. at 921. This Court held that "the cause of action for wrongful death accrues at the death." *Id*. The family's cause of action accrued in October 1954 when the mother and child died. The petition filed in September 1956 was time-barred. The Court recognized its holding resulted in a hardship after it was "forced to construe the cold, clear words of the statute." *Id*.

Relator contends *Frazee* is directly on point and disposes of this writ because Irwin's claim accrued when the decedent died, and there is no dispute her claim was filed beyond the three-year statutory period. Irwin disagrees, maintaining *Frazee* was decided wrongly and should no longer be followed because of holdings in two subsequent wrongful death cases.

In *O'Grady v. Brown*, 654 S.W.2d 904 (Mo. banc 1983), this Court held an unborn, viable fetus was a "person" under the wrongful death statute. *O'Grady*, 654 S.W.2d at 906-07. This Court explained the wrongful death act was "designed to mend the fabric of the common law, not to weaken it." *Id*. at 908. This Court rejected the

7

argument that the wrongful death statute had to be construed strictly and, instead, applied the statute's language "with a view to promoting the apparent object of the legislative enactment." *Id*. at 907-08 (quoting *United Air Lines, Inc. v. State Tax Comm'n*, 377 S.W.2d 444, 451 (Mo. banc 1964)). This Court recognized its duty "to perceive the import of major legislative innovations and to interweave the new legislative policies with the inherited body of common law principles." *Id*. at 908 (quoting *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 392, 90 S. Ct. 1772, 1783, 26 L.Ed.2d 339 (1970)). This Court also set forth three basic objectives the wrongful death statute was enacted to achieve: (1) "to provide compensation to bereaved plaintiffs for their loss;" (2) "to ensure that tortfeasors pay for the consequences of their actions;" and (3) "to deter harmful conduct which might lead to death." *Id*. at 909.

In *Howell v. Murphy*, 844 S.W.2d 42 (Mo. App. W.D. 1992), the plaintiffs appealed the dismissal of their wrongful death suits as time-barred against a man who tortured and murdered their loved ones, then concealed evidence of his crimes for more than five years after their deaths. *Howell*, 844 S.W.2d at 43-44. In reversing and remanding the case, the court of appeals found *O'Grady* "announced a major shift in its interpretation of Missouri's wrongful death statute." *Id*. at 46. After setting forth the three-fold purpose of the wrongful death statute announced in *O'Grady*, the Western District concluded, "The reasoning in *Frazee* is superseded by *O'Grady*." *Id*. The court distinguished *Frazee*'s finding that it was not concerned with the existence of a cause of action but, rather, the inability to discover the identity of the wrongdoer. The *Howell*

8

court stated it was "concerned with the question of the existence of the cause of action." *Id*.

The *Howell* plaintiffs presented evidence that their loved ones were presumed missing, but not dead, until their body parts were discovered or the defendant pleaded guilty to causing their deaths and reported specific dates of death. *Id*. at 45. Thus, the plaintiffs had no choice but to wait before asserting a wrongful death action because the law contained a statutory presumption of life for missing persons. Accordingly, the plaintiffs could not assert any action within a five-year period until they had facts to overcome the statute's presumption. *Id*. at 47. The Western District held that, given the defendant's concealment of the bodies and the statute's presumption that the victims were only missing and not dead, the wrongful death statute of limitations "was tolled until the plaintiffs could, by reasonable diligence, ascertain they had an action." *Id*.

Irwin contends *Howell*'s reasoning is compelling and should control the outcome here. Irwin argues that when Relator and Maples concealed their participation in the decedent's murder, they made it impossible for her to enforce her rights in a timely manner. Conversely, Relator maintains *Howell* is distinguishable and that *Frazee* remains good law despite *Howell*'s statement to the contrary.

While this Court agrees with *Howell*'s statement that *O'Grady* announced a major shift in its interpretation of Missouri's wrongful death statute, this Court finds *Howell* erroneously determined this Court's holding in *O'Grady* superceded *Frazee*. "Generally, this Court presumes, absent a contrary showing, that an opinion of this Court has not been overruled *sub silentio*." *State v. Honeycutt*, 421 S.W.3d 410, 422 (Mo. banc 2013).

"*Sub silentio* is defined as 'without notice being taken or without making a particular point of the matter in question.'" *Id.* (quoting *Webster's Third New International Dictionary* 2279 (1976)). "If the majority chooses to overrule [a case] it is far preferable to do so by the front door of reason rather than the amorphous back door of sub silentio." *Id.* (quoting *Keller v. Marion Cnty. Ambulance Dist.*, 820 S.W.2d 301, 308 (Mo. banc 1991) (Holstein, J., dissenting)). *O'Grady* did not discuss the wrongful death statute of limitations or cite *Frazee* for any proposition of law. Further, *Frazee* and *O'Grady* are factually and legally dissimilar. *O'Grady* was concerned with the definition of "person" for purposes of pursuing a wrongful death claim, while *Frazee* addressed whether the wrongful death statute of limitation could be tolled. *Frazee* remains good law, and *Howell*'s statement to the contrary should no longer be followed.

Relator alleges *Frazee* controls the outcome here. In both *Frazee* and the instant case, the parties had knowledge of the decedents' deaths and the wrongfulness of the deaths. What the aggrieved parties did not know was the identity of the tortfeasors. What distinguishes *Frazee* from this case is Irwin's claim that equitable estoppel forecloses Relator from asserting the wrongful death statute of limitations as a defense to her suit due to the fraudulent concealment of his wrongdoing.

## Equitable Estoppel

A basic common law maxim, deeply rooted in this country's jurisprudence and older than the country itself, is that no person shall take advantage of or benefit from his or her wrong. *Glus v. Brooklyn Eastern Dist. Terminal*, 359 U.S. 231, 232, 79 S. Ct. 760, 762, 3 L.Ed.2d 770 (1959). "[T]his principle has been applied in many diverse classes of

10

cases by both the law and equity courts and has frequently been employed to bar inequitable reliance on statutes of limitations." *Id*. at 232-33. The principle of equitable estoppel was described in *Glus*:

> [W]here one party has by his representation or his conduct induced the other party to a transaction to give him an advantage which it would be against equity and good conscience for him to assert, he would not in a court of justice be permitted to avail himself of the advantage …. [T]he general doctrine is well understood and is applied by courts of law as well as equity where the technical advantage thus obtained is set up and relied on to defeat the ends of justice or establish a dishonest claim.

*Glus*, 359 U.S. at 234 (quoting *Union Mut. Ins. Co. v. Wilkinson*, 80 U.S. 222, 233, 20 L.Ed. 617 (1871)). [2]

"The purpose of the doctrine of equitable estoppel is to prevent a party from taking inequitable advantage of a situation he or she has caused." *Weiss v. Rojanasathit*, 975 S.W.2d 113, 120 (Mo. banc 1998). "A party is estopped to plead the statute of

---

[2] Judge Russell's dissenting opinion finds *Glus* distinguishable because the dissent believes there was nothing in the legislative history of the federal statute to indicate equitable estoppel would not be applicable, and counsel made no compelling argument to the contrary. Judge's Russell's dissenting opinion then states the legislative history of section 537.100 indicates the General Assembly's intent to not include a fraudulent concealment exception. The dissenting opinion strongly adheres to the concept of legislative acquiescence or inaction to support its position. The dissenting opinion claims that because the legislature has not amended section 537.100 to include any fraudulent concealment exception after this Court's decision in *Frazee*, the legislature's inaction is conclusive no matter what factual or legal scenario is presented later. This Court has held that, while legislative inaction is "not conclusive of legislative approval, such inaction can be considered." *South Metro. Fire Prot. Dist. v. City of Lee's Summit*, 278 S.W.3d 659, 669 n.11 (Mo. banc 2009). Further, this Court has cautioned, "it is speculative to infer legislative approval from legislative inaction." *Med. Shoppe Int'l, Inc. v. Dir. of Revenue*, 156 S.W.3d 333, 334 (Mo. banc 2005).

11

limitations only if that party made positive efforts to avoid the bringing of the suit against her or misled the claimants." *Id*. To apply the doctrine of equitable estoppel to bar a defendant's statute of limitations defense, the defendant must have acted affirmatively to induce the plaintiff to delay bringing the action. *Id*.[3]

Several states have cited *Glus*' equitable estoppel principles to prevent a defendant from asserting the statute of limitations as an affirmative defense in wrongful death actions when that defendant has committed fraud to conceal his or her actions.[4] *See Arbutina v. Bahuleyan*, 75 A.D.2d 84, 86 (1980) (acknowledging the well-recognized legal principle that, when a defendant, by a deception, has caused a plaintiff to delay suit

---

[3] Judge Russell's dissenting opinion cites *Weiss* as an example of this Court's judicial restraint in strictly construing a statute of limitations by deferring to the legislature's pronouncement and rejecting an equitable estoppel argument. However, a close reading of *Weiss* demonstrates this Court analyzed the merits of the plaintiff's equitable estoppel argument. While this Court ultimately rejected the plaintiff's estoppel claim, it was because there was no showing the doctor acted affirmatively to induce the plaintiff to delay filing her lawsuit. *Weiss*, 975 S.W.2d at 121. Accordingly, it was the plaintiff's failure to plead the proper elements of equitable estoppel that caused her claim to fail, not this Court's unwillingness to apply equitable estoppel to statutes of limitation.

[4] Judge Russell's dissenting opinion criticizes the principal opinion for relying upon multiple cases from other jurisdictions, yet it relies upon a secondary source, THEODORE SEDGWICK, A TREATISE ON THE RULES WHICH GOVERN THE INTERPRETATION AND CONSTRUCTION OF STATUTORY AND CONSTITUTIONAL LAW, 277 (Pomeroy, ed., 2d ed. 1874, reprint 2012), as "considerable historical precedent" for the proposition that courts have long rejected the creation of an equitable exception to the statute of limitations. Sedgwick's generic musings about this topic may be informative. However, they are considerably less persuasive than Missouri's sister states, that, under similar statutory frameworks, have seen fit to apply the long-standing doctrine of equitable estoppel to prevent a wrongdoer from benefiting from his or her own fraud, even when their statutes do not contain an express exception.

on a known cause of action until the statute of limitations has run, the courts will apply the doctrine of estoppel to prevent an inequitable use of the statute as a defense); *Krueger v. St. Joseph's Hosp.*, 305 N.W.2d 18, 25 (N.D. 1981) (finding estoppel could apply to wrongful death actions because it operates to preclude one guilty of wrongdoing from asserting the statute of limitations as a defense); *First Interstate Bank of Fort Collins, N.A. v. Piper Aircraft Corp.*, 744 P.2d 1197, 1200-01 (Colo. 1987) (recognizing the "long history at common law of disapprobation of fraud" and holding wrongful death statute of limitations does not begin to run in face of fraudulent concealment, stating, "To hold otherwise would allow tortfeasors, by virtue of knowing and intentional fraudulent conduct, to defeat the basic purpose of the wrongful death statute - protecting the interests of those who, through no fault of their own, must 'bear the burden of such tragic events.'"); and *Muller v. Thaut*, 430 N.W.2d 884, 893 (Neb. 1988) (citing several cases discussing the maxim that one may not assert the statute of limitations to take advantage of one's own wrongdoing and concluding that fraudulent concealment, if proved by the plaintiff, estops the defendant from asserting the statute of limitations as a defense to plaintiff's wrongful death action).

Other jurisdictions applied the common law maxim regarding fraud vitiating any assertion of the statute of limitations in wrongful death actions, although without citation to *Glus*. *See*, *e.g.*, *Geisz v. Greater Baltimore Med. Ctr.*, 545 A.2d 658, 668-69 (Md. 1988) (recognizing an "ancient maxim that no one should profit by his own conscious wrong is too deeply imbedded in the framework of our law to be set aside by legalistic distinction[s]" between statutes of limitation, and concluding estoppel based on

13

fraudulent concealment could forestall the wrongful death statute of limitations if pleaded and proven); *DeCosse v. Armstrong Cork Co.*, 319 N.W.2d 45, 50-52 (Minn. 1982) (acknowledging "a person should not be permitted to shield himself behind the statute of limitations where his own fraud has placed him. He should not be permitted to profit by his own wrong, and it would strike the moral sense strangely to permit him to do so …. Fraud is bad, it should not be permitted to go unchecked anywhere, and justice should always be able to penetrate its armor" and holding wrongful death actions are subject to tolling where a cause of action is concealed fraudulently); *Cox v. Upjohn Co.*, 913 S.W.2d 225, 231 (Tex. App. 1995) (explaining "fraud vitiates whatever it touches" and to permit a defendant to invoke the wrongful death statute of limitations after concealing his or her wrongdoing "would make the statute a means of encouraging rather than preventing fraud"); *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 324, (Cal. Ct. App. 1974) (stating, "To hold that by concealing fraud, or by committing fraud in such a manner as to conceal it until after the party committing the fraud could plead the statute of limitations to protect itself, is to make the law which was designed to prevent fraud the means by which it is successful and secure."); and *Krevitz v. City of Philadelphia*, 648 A.2d 353, 357 (Pa. 1994) (holding a defendant is estopped from invoking the bar of a statute of limitations "[w]here, 'through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry' ….").

Further, there are cases that specifically apply these common law maxims and equitable estoppel to prevent defendants who have committed murders from relying on the wrongful death statute of limitations as a defense when sued civilly. *See Brookshire*

14

*v. Burkhart*, 283 P. 571, 578 (Okla. 1929) (finding fraudulent concealment was an implied exception to the wrongful death statute of limitations against murder, explaining a party who concealed material facts that prevented the discovery of the wrong or fact that cause of action accrued is not allowed to take advantage of that wrong by pleading the statute, the purpose of which is to prevent wrongdoing and fraud); *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 936 (4th Cir. 1991) (applying equitable estoppel due to fraudulent concealment to Virginia's wrongful death statute of limitations because to do otherwise would lead to unjust results, such as "enabl[ing] a murderer to escape civil liability by concealing his identity or the nature of his crime until the expiration of the period of limitations."); *Friedland v. Gales*, 509 S.E.2d 793, 798 (N.C. Ct. App. 1998) (holding murderer's intentional concealment of identity as perpetrator equitably estopped him from asserting statute of limitations as a defense to wrongful death action); and *Bernoskie v. Zarinsky*, 781 A.2d 52, 57 (N.J. Super. Ct. App. Div. 2001) (applying equitable tolling to a plaintiff's wrongful death action filed forty years after decedent's death, finding "a murderer who escapes detection and apprehension has no equitable claim to the repose from the threat of litigation that statutes of limitation are designed to provide").[5]

---

[5] Irwin also cites *Collins v. Sotka*, 692 N.E.2d 581 (Ohio 1998), *Fulton Cnty. Adm'r v. Sullivan*, 753 So.2d 549 (Fla. 1999), and *Allred v. Chynoweth*, 990 F.2d 527 (10th Cir. 1993) to support her equitable estoppel claim. None of these cases aid Irwin's argument because they applied either the discovery ruling or a tolling mechanism. In *Collins*, the court applied the discovery rule, not fraudulent concealment or equitable tolling, to the plaintiff's action. *Collins*, 692 N.E.2d at 585. In *Sullivan*, although discussing the inequities of permitting a wrongdoer to benefit from his or her own fraud, the court ultimately relied on a Georgia statute that expressly tolled the wrongful death statute of

15

Relator argues this Court must reject Irwin's argument because this Court lacks the constitutional authority pursuant to the separation of powers provision contained in Missouri Constitution article II, section 1 to create an equitable estoppel exception to the wrongful death statute of limitations.[6]  Relator cites cases wherein this Court held that statutes of limitations may only be suspended or tolled by specific enactments of the legislature, and the courts are not empowered to extend those exceptions.  *See*, *e.g.*, *Sanders v. Ahmed*, 364 S.W.3d 195, 205 (Mo. banc 2012) (holding only the legislature can place limits on the causes of actions it creates and to do "otherwise would be to tell the legislature it could not legislate").

Relator does not address any of the cases Irwin cited from other jurisdictions, explaining that the common law maxim that one cannot benefit from his or her fraud is a notion that is older than the country itself.  Missouri's adoption of these common law maxims predates *Glus*.  *See Perry v. Strawbridge*, 108 S.W. 641, 642-43 (Mo. 1908), (reiterating the basic principle that "[n]o one shall be permitted to profit by his own fraud,

---

limitations for fraud.  *Sullivan*, 753 So.2d at 552.  In *Allred*, the court applied Utah law to hold the "exceptional circumstances" version of the discovery rule tolled wrongful death statute of limitations against a murderer who confessed to the crime ten years after the death because "application of the general rule would be irrational or unjust" regardless of any showing defendant prevented discovery of the cause of action.  *Allred*, 990 F.2d at 532.

[6] Mo. Const. art. II, sec. 1 states:
> The powers of government shall be divided into three distinct departments – the legislative, executive and judicial – each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted.

16

or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime. These maxims are adopted by public policy, and have their foundation in universal law administered in all civilized countries.") (quoting *Box v. Lanier*, 79 S.W. 1042, 1045 (Tenn. 1904)). This Court acknowledged these common law maxims were adopted expressly as Missouri law and later codified by section 1.010, the common law reception statute.[7] *Id.* at 644. The *Perry* court considered, and ultimately rejected, the notion that these common law maxims were "either expressly or impliedly changed or modified" by statute or that the common law either repealed, changed or modified them. *Id.*

Section 1.010 expressly provides that "all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof." This comports with this Court's instruction in *O'Grady* that the wrongful death act be construed so as "to perceive the import of major legislative innovations and to interweave

---

[7] Section 1.010 provides:

> The common law of England and all statutes and acts of parliament made prior to the fourth year of the reign of James the First, of a general nature, which are not local to that kingdom and not repugnant to or inconsistent with the Constitution of the United States, the constitution of this state, or the statute laws in force for the time being, are the rule of action and decision in this state, any custom or usage to the contrary notwithstanding, but no act of the general assembly or law of this state shall be held to be invalid, or limited in its scope or effect by the courts of this state, for the reason that it is in derogation of, or in conflict with, the common law, or with such statutes or acts of parliament; but all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof.

the new legislative policies with the inherited body of common law principles."
*O'Grady*, 654 S.W.2d at 908.

Relator argues certain statutory construction principles preclude this Court's application of the common law maxims and equitable estoppel to the wrongful death statute of limitations. Relator claims Missouri courts are prohibited from engrafting exceptions onto special statutes of limitations that would toll the running thereof based on fraud, concealment, or any other conduct not stated explicitly in the statute, citing *Frazee*. However, tolling and accrual are distinct legal concepts from the application of fraudulent concealment as a form of equitable estoppel, which forecloses a defendant from pleading the statute of limitations as a defense. The application of equitable estoppel does nothing to engraft a tolling mechanism or otherwise extend the statute of limitations beyond what is stated expressly in the statute. The cause of action still accrues at the decedent's death, and the statute of limitations begins to run at that time. Equitable estoppel does not toll the running of the statute. Rather, it forecloses the wrongdoer, who concealed his or her actions fraudulently, from asserting the defense. Therefore, this Court has not run afoul of its constitutional duties by reaching this holding.

This Court holds the application of common law maxims precluding one from benefitting from his or her own fraud and application of the doctrine of equitable estoppel bars Relator from asserting the statute of limitations as a defense to Irwin's cause of action. In so doing, this Court follows the dictates of *O'Grady* by interweaving legislative policies with the inherited body of common law principles so as to reach a

18

remedial purpose ensuring that tortfeasors be held liable for the consequences of their actions and cannot benefit from their own fraud. This approach is supported by caselaw from many other jurisdictions, which have addressed this precise issue. Relator's interpretation of the wrongful death statute of limitations not only contravenes the purposes set forth in *O'Grady*, it seeks to reward fraudulent concealment, the destruction of evidence, and the very act of murder. This Court cannot fathom that the legislature's intent when enacting the wrongful death statute of limitations was to permit tortfeasors to evade liability for causing wrongful deaths so long as the tortfeasor could conceal their wrongdoing until the statute of limitations expired, while other torfeasors, guilty of the same conduct, except for the fortuity that it merely caused injury instead of death, would be held liable for damages. Such a reading of section 537.100 would lead to an absurd and illogical result.[8]

## Conclusion

The circuit court did not abuse its discretion in overruling Relator's motion to dismiss Irwin's wrongful death suit because the doctrine of equitable estoppel forecloses Relator from relying on the statute of limitations as an affirmative defense due to his

---

[8] This Court recognizes the holding in this case differs from that in *Boland v. Saint Luke's Health Sys., Inc.*, --- S.W.3d --- (No. SC93906) (Mo. banc 2015), handed down this same day. *Boland* is predicated upon a civil factual pattern wherein the defendants filed a motion to dismiss while *Beisly* is predicated upon a criminal factual pattern and seeks writ relief.

fraudulent concealment of his wrongdoing. The preliminary order in prohibition is quashed.[9]

_____
GEORGE W. DRAPER III, JUDGE

Stith and Teitelman, JJ., and Gabbert, Sp.J., concur; Fischer, J., dissents in separate opinion filed; Russell, J., dissents in separate opinion filed; Fischer and Wilson, JJ., concur in opinion of Russell, J. Breckenridge, C.J., not participating.

---

[9] It should be noted that this Court's historical treatment of special judges accords their votes the same weight as the regular members of this Court. *See* Rule 11.02 (providing, "A judge or commissioner so transferred, during the period designated, shall have the same powers and responsibilities as a judge of the court or district to which he [or she] is transferred").



# SUPREME COURT OF MISSOURI
# en banc

STATE OF MISSOURI ex rel.                )
BOB T. BEISLY II,                                )
                                                            )
         Relator,                                 )
                                                            )
v.                                                          )    No. SC94030
                                                            )
THE HONORABLE TIMOTHY PERIGO,   )
                                                            )
        Respondent.                          )

## DISSENTING OPINION

I concur in the dissenting opinion of the Honorable Mary Russell. I write separately to explain regretfully that today the Supreme Court of Missouri has issued conflicting opinions and my view of how this could have and should have been avoided.

This Court granted transfer of *State of Missouri ex rel. Bob T. Beisly II, v. The Honorable Timothy Perigo* and *Sally Boland, et al. v. Saint Luke's Health System, Inc., et al.* on the same date.[1] Rule 83.04. *Boland* involves a direct appeal, and *Beisly* involves a petition seeking a writ of prohibition, but the legal issues regarding the wrongful death

---

[1] The Southern District opinion in *Beisly* expressly recognized that it was in conflict with the Western District's opinion in *Boland*. See attached Appendix A, pages 11-14.

statute of limitation are the same. The Honorable Patricia Breckenridge recused in this case, and the Honorable Anthony Rex Gabbert was assigned as a special judge.[2]

In my view, this Court should not have issued the majority opinion in this case that is contrary to the position taken by a majority of the regular members of this Court in *Boland*, especially as the majority in this case was only possible with the assistance of a special judge from the Court of Appeals, Western District. Rather, this Court should have retransferred the case to the Court of Appeals, Southern District, whose previous opinion in this case faithfully adhered to this Court's precedent and the position now taken by a majority of this Court's regular members in *Boland*. The opinion from the Court of Appeals, Southern District is attached as Appendix A to this opinion.

The rules governing transfer of cases from the court of appeals after opinion are 84.04, 84.05 and 84.06. Rule 83.04 provides in pertinent part: "case may be transferred by order of this Court on application of a party for any reasons specified in Rule 83.02 or for the reason that the opinion filed is contrary to a previous decision of an appellate court of this state."

It is important to note that the Southern District's opinion in this case was not in conflict with an opinion of this Court, but was in conflict with the opinion in *Boland* as decided by the Court of Appeals, Western District. Because a majority of this Court's regular members now have vacated and rejected the court of appeals' decision in *Boland*,

---

[2] Judge Breckenridge was not recused from *Boland* and, therefore, participated in that case. Judge Gabbert is a judge on the Court of Appeals, Western District.

there remains no reason for this Court to issue an opinion in this case which quashes a writ of prohibition.

In my view, there is no practical or legitimate reason to issue an opinion in *Beisly* which is in conflict with *Boland* on the same day and that required a special judge to garner a majority. As noted, the proper approach would have been to retransfer, which requires a majority vote of the judges on the case.

It is not lost on me that the majority opinion in this case ultimately quashes the writ of prohibition issued by the Court of Appeals, Southern District. The quashing of that writ does not foreclose the defendant from filing yet another motion to dismiss. It will then be up to Honorable Timothy Perigo to decide the precedential value of these conflicting opinions and, therefore, how the ultimate appeal of his decision in the underlying wrongful death action would be resolved on appeal by the Court of Appeals, Southern District, (which presumably will have original appellate jurisdiction) or by this Court if transfer were granted.

_____
Zel M. Fischer, Judge

# Appendix A

Electronically Filed - SUPREME COURT OF MISSOURI - February 26, 2014 - 05:24 PM



## Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI EX REL. | ) | |
| BOB T. BEISLY II, | ) | |
| | ) | |
| | ) | |
| Relator, | ) | |
| | ) | |
| vs. | ) | No. SD32800 |
| | ) | |
| THE HONORABLE TIMOTHY PERIGO, | ) | **Filed: Jan. 23, 2014** |
| | ) | |
| Respondent. | ) | |

ORIGINAL PROCEEDING IN PROHIBITION

**PERMANENT WRIT IN PROHIBITION ISSUED**

*(Before Bates, P.J., Burrell, J., and Sheffield, J.)*

PER CURIAM. Three years, six months, and 29 days after Belinda J. Beisly ("Belinda") was murdered, Wilma Jean Irwin ("Irwin")[1] filed a petition against Bob T. Beisly, II ("Relator") and Jeremy L. Maples ("Maples") seeking damages for Belinda's wrongful death. Relator moved to dismiss the claim against him, arguing that the action was barred by the expiration of the three-year statute of limitation on wrongful death

---

[1] Irwin is Belinda's mother.

1

4

claims. *See* §§ 537.080 and 537.100.[2] The Honorable Timothy Perigo ("Respondent") denied Relator's motion. Relator then petitioned this court to prohibit Respondent from taking any further action in the case other than to dismiss it with prejudice. We issue a permanent writ in prohibition.

## Factual and Procedural History[3]

On July 15, 2009, Belinda was found dead at her residence in Vernon County, Missouri.[4] An autopsy established that she died from multiple gunshot wounds, and the coroner concluded that her death was a homicide. On February 8, 2013, after a lengthy investigation, the State of Missouri filed felony charges against Relator and Maples in

---

[2] All statutory references are to RSMo 2000. As relevant to this case, § 537.080.1 provides:

> Whenever the death of a person results from any act, conduct, occurrence, transaction, or circumstance which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who, or the corporation which, would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured . . . .

Section 537.100, in turn, provides:

> Every action instituted under section 537.080 shall be commenced within three years after the cause of action shall accrue; provided, that if any defendant, whether a resident or nonresident of the state at the time any such cause of action accrues, shall then or thereafter be absent or depart from the state, so that personal service cannot be had upon such defendant in the state in any such action heretofore or hereafter accruing, the time during which such defendant is so absent from the state shall not be deemed or taken as any part of the time limited for the commencement of such action against him; and provided, that if any such action shall have been commenced within the time prescribed in this section, and the plaintiff therein take or suffer a nonsuit, or after a verdict for him the judgment be arrested, or after a judgment for him the same be reversed on appeal or error, such plaintiff may commence a new action from time to time within one year after such nonsuit suffered or such judgment arrested or reversed; and in determining whether such new action has been begun within the period so limited, the time during which such nonresident or absent defendant is so absent from the state shall not be deemed or taken as any part of such period of limitation.

[3] The trial court was obligated to "take the statements of fact in the petition as true" in ruling the motion to dismiss, *Plengemeier v. Thermadyne Indus., Inc.*, 409 S.W.3d 395, 400 (Mo. App. E.D. 2013), and as a result, we take our summary of the facts from the amended petition.
[4] Relator and Belinda were married but had been legally separated for a number of years prior to her death.

2

connection with Belinda's death. The State alleged that Maples murdered Belinda by shooting her and that Relator encouraged or aided Maples.

On February 13, 2013, Irwin filed a petition for wrongful death against Relator and Maples. Relator moved to dismiss, arguing that the action was barred by the special three-year statute of limitation applicable to wrongful death claims as the petition was filed more than three years after Belinda's death. *See* § 537.100. In opposing suggestions, Irwin argued that the § 537.100 limitation period did not operate to extinguish her wrongful death claim because Relator and Maples "fraudulently concealed" their roles in Belinda's death. Specifically, she claimed that the pair attempted to evade discovery by using a shotgun which "could not be traced[,]" staging the crime scene to "look like a break in[,]" destroying evidence, denying their involvement, and lying to investigators. Thus, she argued, Relator's and Maples's deliberate efforts to conceal their conduct made it impossible to ascertain their involvement in Belinda's death until more than three years after her death.

On June 6, 2013, Respondent entered an order denying Relator's motion to dismiss. On July 8, 2013, Relator filed his petition for writ of prohibition in this court, asking that we prohibit Respondent from taking any other action in the underlying case other than to dismiss it with prejudice.

## Standard of Review

"Prohibition is a discretionary writ, and there is no right to have the writ issued." *State ex rel. Linthicum v. Calvin*, 57 S.W.3d 855, 856-57 (Mo. banc 2001). "A writ of prohibition will issue to prevent an abuse of discretion, irreparable harm to a party, or an extra-jurisdictional act and may be appropriate to prevent unnecessary, inconvenient, and

3

expensive litigation." ***State ex rel. Wyeth v. Grady***, 262 S.W.3d 216, 219 (Mo. banc 2008). A writ is appropriate to prohibit a lower court from proceeding on a claim barred by the applicable statute of limitation. ***State ex rel. Holzum v. Schneider***, 342 S.W.3d 313, 315 (Mo. banc 2011).

**Analysis**

Relator argues that a defendant's concealment of his identity or involvement in the death of a decedent does not operate to delay the accrual of a cause of action for wrongful death and does not toll the statute of limitation in § 537.100, citing ***Frazee v. Partney***, 314 S.W.2d 915 (Mo. 1958).

Respondent argues that the Supreme Court's decision in ***O'Grady v. Brown***, 654 S.W.2d 904 (Mo. banc 1983), superseded ***Frazee***, as determined by the western district of this court in ***Howell v. Murphy***, 844 S.W.2d 42, 46 (Mo. App. W.D. 1992). *See also* ***Boland v. Saint Luke's Health Sys., Inc.***, Nos. WD75364, WD75366, WD75367, WD75484, and WD75485, 2013 WL 6170598 (Mo. App. Nov. 26, 2013). Because the Western District also distinguished ***Frazee***, legally and factually, in ***Howell*** and ***Boland***, we begin with an analysis of each of these four cases.

***Frazee*** involved two actions for wrongful death arising out of an automobile accident. 314 S.W.2d at 916-17. The accident occurred when a truck driven by Howard Partney (Partney) swerved into the path of a car occupied by seven members of the Frazee family. *Id.* at 917. In attempting to avoid a collision, Warren Frazee lost control of the family's vehicle, his car went down a slope, and it rolled over several times. *Id.* As a result of the accident, two members of the Frazee family died. *Id.* The Frazees claimed that they did not initially know the identity of the driver of the truck. *Id.* Warren

4

Electronically Filed - SUPREME COURT OF MISSOURI - February 26, 2014 - 05:24 PM

Frazee testified that he first learned Partney's identity from the Highway Patrol more than seventeen months after the accident occurred. *Id.* Almost two years after the accident, members of the Frazee family filed two separate claims for wrongful death against Partney. *Id.* at 916. Partney asserted the claims were barred by the (then) one-year statute of limitation set forth in § 537.100 RSMo (1949) because the suits had not been filed within one year of the decedents' deaths.[5] *Id.* at 916-17. The trial court found the claims were barred by the statute of limitation and entered judgments in favor of Partney. *Id.* at 917.

The Frazees advanced two principal arguments on appeal. First, they contended that their "causes of action did not accrue until suits could be validly commenced and maintained against an 'actual' defendant[.]" *Id.* at 917. Second, they claimed that Partney's conduct served to toll or extend the period of limitation. *Id.* Their petitions alleged that Partney "'fraudulently, intentionally, deliberately, wilfully [sic], maliciously, and of his spite absented himself and concealed his identity from the plaintiffs and all other persons from and after the 10th day of October, 1954, until the 23rd day of March, 1956.'" *Id.* at 916. The Supreme Court rejected both arguments and held that the Frazees' wrongful death claims were barred by the statute of limitation. *Id.* at 920-21.

Addressing the Frazees' second argument first, the Supreme Court characterized § 537.100 as a special statute of limitation to which the tolling provisions and exceptions in the general statutes governing statutes of limitation in chapter 516 RSMo do not apply. *Id.* at 919. *See also* § 516.300 (providing that the general statutes do not apply to any action that is "otherwise limited by any statute"). The court explained that "[a] special

---

[5] As relevant here, § 537.100 RSMo (1949) provided: "Every action instituted by virtue of sections 537.070 to 537.090, 537.110 and 537.260, shall be commenced within one year after the cause of action shall accrue[.]"

5

Electronically Filed - SUPREME COURT OF MISSOURI - February 26, 2014 - 05:24 PM

statute of limitations must carry its own exceptions and we may not engraft others upon it." *Id.* Thus, while § 516.280 (a general statute) provides for the tolling of a statute of limitation where a person "prevent[s] the commencement of an action" "by absconding or concealing himself, or by any other improper act," this exception does not apply to the limitation period prescribed in § 537.100. *Id.* at 919. Finding that the wrongful death statutes do not provide for the tolling of the statute of limitation due to fraud or concealment, the Court concluded that the alleged conduct of Partney did not toll or extend the limitation period. *Id.* at 919-20.

The Court likewise rejected the Frazees' argument that a cause of action for wrongful death does not accrue until a plaintiff learns the identity of the defendant. *Id.* at 921. The Frazees argued that they could not effectively commence an action because no valid summons could be issued. *Id.* Our high court noted, however, that the limitation period set forth in § 537.100 began to run "from the '*accrual*' of the cause of action, not from the time when one may be effectively commenced." *Id.* The Court observed that a number of its own cases had held that a wrongful death cause of action accrues at death. *Id.* While the Court acknowledged that those cases involved "facts widely different from ours," it further stated, "[W]e do not feel justified in departing from the general principle announced in the absence of supporting authority." *Id.* Adhering to this "general principle[,]" the Court affirmed the trial court's determination that the Frazees' claims were barred by § 537.100. *Id.*

In *O'Grady*, our supreme court was confronted with a very different question. There, Terri and Kevin O'Grady brought a wrongful death action against two physicians for the death of their unborn child. 654 S.W.2d at 906. The trial court dismissed the

6

9

Electronically Filed - SUPREME COURT OF MISSOURI - February 26, 2014 - 05:24 PM

claim based on *State ex rel. Hardin v. Sanders*, 538 S.W.2d 336 (Mo. banc 1976), a case in which the Court had held that an unborn fetus was not a "person" whose death gave rise to a claim under the wrongful death statute. *Id.* In their appeal, the O'Gradys asked the Court to reconsider its holding in *Sanders*. *Id.* In its analysis, the Court expressly rejected an argument by the respondents that the wrongful death statute should be strictly construed. *Id.* at 908.

> Respondents assert that this statute must be "strictly construed" because it is "in derogation of the common law." We do not agree. The wrongful death statute is not, strictly speaking, in "derogation" of the common law. Derogation is defined as "[t]he partial abrogation or repeal of a law, contract, treaty, legal right, etc." or as a "lessening, weakening, curtailment, . . . impairment," detraction or taking away of a power or authority. 3 Oxford English Dictionary 232 (1933). Wrongful death acts do not take away any common law right; they were designed to mend the fabric of the common law, not to weaken it. Remedial acts are not strictly construed although they do change a rule of the common law. *Steggal v. Morris*, 363 Mo. 1224, 258 S.W.2d 577, 582 (1953). We must therefore apply the statutory language "with a view to promoting the apparent object of the legislative enactment." *United Airlines v. State Tax Commission of Missouri*, 377 S.W.2d 444, 451 (Mo. banc 1964).

*Id.* at 907-08 (footnote omitted). The Court thus endeavored to determine whether a cause of action for the wrongful death of an unborn child was consistent with the purpose of the wrongful death statute. *Id.* at 908-09. The court identified "three basic objectives" for the statute: "[T]o provide compensation to bereaved plaintiffs for their loss, to ensure that tortfeasors pay for the consequences of their actions, and generally to deter harmful conduct which might lead to death." *Id.* at 909. Based on these objectives, considerations of the interests of both the parents and the fetus in protection from injury and death, and other factors, the Court found that the wrongful death statute "does provide a cause of action for the wrongful death of a viable fetus[,]" overruling *State ex rel. Hardin*. *Id.* at 911. *O'Grady* made no reference to *Frazee*.

7

10

In *Howell v. Murphy*, 844 S.W.2d 42 (Mo. App. W.D. 1992), the Western District considered the application of § 537.100 to a complex set of facts. There, the plaintiffs filed claims for wrongful death against Robert A. Berdella Jr. ("Berdella") for the deaths of three individuals: Robert Allen Sheldon ("Sheldon"), James Ferris ("Ferris"), and Jerry D. Howell ("Howell"). *Id.* at 43. The plaintiffs filed their petition a few months after Berdella pleaded guilty to murdering Sheldon, Ferris, and Howell. *Id.* at 44-45. Berdella moved for summary judgment on the wrongful death claims, asserting that they were barred by the three-year statute of limitation in § 537.100 because they were filed more than three years after the decedents' deaths. *Id.* at 43-44. In determining the date of the victims' deaths, the trial court relied on Berdella's testimony at his criminal guilty plea hearing, his responses to the plaintiffs' interrogatories, and an affidavit attached to his motion for summary judgment. *Id.* at 44. Outside of Berdella's representations, there was no evidence of when the decedents actually died.[6] *Id.* Based on the dates of death given by Berdella, and relying on *Frazee*, the trial court concluded that the plaintiffs' wrongful death claims were barred by the three-year statute of limitation and granted Berdella's motion for summary judgment. *Id.* at 45.

---

[6] The bodies of Ferris and Howell were never found. Only parts of Sheldon's body were recovered. The Western District's opinion relates:

> [T]he plaintiffs presented Sheldon's death certificate which reported his date of death to be April 2, 1988, the date authorities found parts of his body, and a presumptive certificate of death issued on December 21, 1988, by the circuit court of Jackson County setting Ferris' date of death as September 27, 1985. They presented evidence that the Sheldons did not know of Sheldon's death until parts of his body were found and that the Howells did not know that Jerry Howell was dead until Berdella testified at his guilty plea on December 19, 1988, to killing him. The plaintiffs also asserted that Bonnie Ferris also assumed [that] her husband [was] alive, though missing, until Berdella's guilty plea, but they presented no competent evidence support[ing] that allegation.

*Id.* at 45.

Electronically Filed - SUPREME COURT OF MISSOURI - February 26, 2014 - 05:24 PM

On appeal, the Western District reversed, holding that the Supreme Court's rejection of strict construction of the wrongful death statute in *O'Grady* represented a "major shift in its interpretation of Missouri's wrongful death statute" that effectively superseded the reasoning of *Frazee*. *Id.* at 46. In addition to concluding that *O'Grady* had superseded *Frazee*, the Western District also distinguished *Frazee* as follows:

> Moreover, the *Frazee* court stated emphatically, "We are not concerned here with any question of the *existence* of either a cause of action, or of parties plaintiff, or of a party defendant; this case presents merely an inability to discover the identity of the defendant." 314 S.W.2d at 921 (emphasis in original). In this case, we are concerned with the question of the existence of a cause of action. We conclude, therefore, that *Frazee* and any other case in which death could not be ascertained do not provide guidance for this case.

*Id.* at 46-47.

Based on *O'Grady*, the Western District considered the legislative purposes for the wrongful death statute in the application § 537.100 to the facts before it. *Id.* at 47. The court found that the granting of Berdella's motion for summary judgment was contrary to the "three basic objectives" of the wrongful death statute, as recognized by the Supreme Court in *O'Grady*, and that such an outcome would "[suggest] that any tortfeasor can escape all civil liability merely by concealing his evil deeds for three years." *Id.* The court therefore held that Berdella's concealment of the victims' deaths had the effect of tolling the period of limitations in § 537.100 "until the plaintiffs could, by reasonable diligence, ascertain that they had an action." *Id.* Having engaged in this rather extensive analysis of *Frazee*, the court ultimately acknowledged it as dicta, concluding "that *Frazee* and any other case in which death could not be ascertained do not provide guidance for this case." *Id.* at 46-47.

9

Electronically Filed - SUPREME COURT OF MISSOURI - February 26, 2014 - 05:24 PM

The Western District again took up a question of the effect of concealment under the provisions of § 537.100 in **Boland v. Saint Luke's Health Sys., Inc.**, Nos. WD75364, WD75366, WD75367, WD75484, and WD75485, 2013 WL 6170598 (Mo. App. Nov. 26, 2013). There, separate plaintiffs brought five wrongful death suits against three corporate defendants associated with a medical center. *Id.* at *1. The plaintiffs alleged that a respiratory therapist working at the medical center killed the five decedents by administering lethal doses of medication. *Id.* They further alleged that the defendants, after gaining knowledge of the events and circumstances, "intentionally concealed" the respiratory therapist's activities, breached their duty to notify the decedents' families, and "affirmatively acted to conceal from [the plaintiffs] the existence of a [wrongful death] claim." *Id.* at *1, *4. In response, the defendants moved for judgment on the pleadings on the ground that the claims were barred by the three-year limitation period in § 537.100. *Id.* at *1. The trial court granted the defendants' motions for judgment on the pleadings. *Id.*

On appeal, the plaintiffs argued that the defendants' concealment and failure to disclose the circumstances of the decedents' deaths had the effect of tolling the statute of limitation in § 537.100. *Id.* at *5. Alternatively, they argued that their causes of action did not accrue under the wrongful death statute until they could reasonably ascertain the cause of death of the decedents. *Id.* The Western District first noted that the two arguments presented distinct issues:

> Accrual is defined as "when the right to sue arises." *Chambers v. Nelson*, 737 S.W.2d 225, 226 (Mo.App.E.D.1987) (citing *Hunter v. Hunter*, 361 Mo. 799, 237 S.W.2d 100, 103 (1951)). Accrual also marks the time when an applicable statute of limitations begins to run. *Chambers*, 737 S.W.2d at 226 (citation omitted). Tolling provisions, on the other hand, "interrupt [ ] the running of a statute of limitations in

10

13

certain situations." BLACK'S LAW DICTIONARY (Thompson Reuters, 9th ed.2009). *See also, e.g., Corrales v. Murwood, Inc.*, 232 S.W.3d 609, 612–14 (Mo.App.E.D.2007). Thus, while every cause of action has a time of accrual, not every cause of action will be subject to tolling. Further, if the cause of action has never accrued, there is nothing to toll, because an event or circumstance cannot "interrupt" that which has never started.

*Id.* The court did not address the tolling argument because it concluded that the plaintiffs' causes of action "did not accrue until the wrongful nature of the deaths were known or reasonably discovered by a diligent plaintiff[.]" *Id.* at *6. In so holding, the court acknowledged that prior cases, including *Frazee*, generally have stated that claims for wrongful death accrue upon death. *Id.* The Western District noted, however, that the wrongful death statute does not expressly provide that a claim accrues upon death. *Id.* Further, the court found under the facts before it that such a reading would be inconsistent with *O'Grady*'s "mandate that, in order to promote the purpose and objectives of the Wrongful Death Act, the Act shall not be strictly construed." *Id.* The Western District found *Frazee* to be "inapplicable" for several reasons, including that it was "nullified by *O'Grady*, in which the Supreme Court mandated a liberal interpretation of the Wrongful Death Act." *Id.* at *9.

Although we recognize the public policy attraction of a broad interpretation of *O'Grady*, and the Western District's attempts to distinguish *Frazee* in *Howell* and *Boland*, we do not feel at liberty to follow a similar track in the instant case. As an initial matter, we note that *Howell* and *Boland* are factually and legally distinguishable from this case. In *Howell*, the actual dates of the decedents' deaths were unknowable to anyone other than the defendant, and although the defendant made representations concerning the dates of their deaths, his credibility was problematic, at best. 844 S.W.2d at 45. Moreover, the plaintiffs were unaware of the decedents' deaths for some time after

11

14

Electronically Filed - SUPREME COURT OF MISSOURI - February 26, 2014 - 05:24 PM

they occurred. *Id.* The evidence supported the plaintiffs' claims that they did not have actual knowledge of one or more of the decedents' deaths until the defendant pleaded guilty to the murders. *Id.* These facts led the Western District to characterize the issue in the case as a "question of the existence of a cause of action[,]" which it distinguished from the issue addressed in *Frazee*. *Id.* at 46. Similarly, *Boland* involved a question as to the plaintiffs' knowledge of the existence of a cause of action in that the plaintiffs were unaware of the suspicious nature of decedents' deaths or of the respiratory therapist's actions until well after the deaths had occurred. 2013 WL 6170598 at *5. Thus, although the plaintiffs knew of the deaths, they claimed they lacked sufficient information to know that the deaths were wrongful. *Id.*

Unlike *Howell* and *Boland*, this case presents no issue concerning the claimant's timely knowledge of: (1) the fact of Belinda's death; (2) the date of Belinda's death; or (3) the suspicious nature – *i.e.*, the wrongfulness – of Belinda's death. Instead, the issue here closely resembles that present in *Frazee* -- "merely an inability to discover the identity of the defendant." 314 S.W.2d at 921.

Further, we do not agree with the Western District's conclusion that *O'Grady* superseded *Frazee* for three principal reasons. First, the two cases are factually and legally dissimilar. *O'Grady* was concerned with whether a claim for the wrongful death of an unborn child could be maintained under the wrongful death statute. 654 S.W.2d at 906. It did not involve any question concerning the application of § 537.100 -- the sole focus in *Frazee*.

Second, the Supreme Court's application of § 537.100 in *Frazee* does not strike us as inherently inconsistent with *O'Grady*'s purpose-oriented construction of the wrongful

12

death statutes. Our high court did not purport to employ strict construction in resolving *Frazee*. On the contrary, the Court expressly stated, "In the final analysis we are seeking here to determine the legislative intent." [7] 314 S.W.2d at 920. The fact that the Court concluded that the plaintiffs' claims were barred by § 537.100 does not mean that its interpretation was fundamentally inconsistent with the legislative purpose for the wrongful death statutes. By enacting § 537.100, the legislature clearly intended to place time limits on actions for wrongful death.

Third, and perhaps most importantly, *O'Grady* did not expressly overrule *Frazee*. In fact, *O'Grady* makes no mention of *Frazee* at all. Thus, in order to conclude that *O'Grady* superseded or overruled *Frazee*, we must find that it did so implicitly, or *sub silentio*. This we cannot do. In *State v. Honeycutt*, No. SC92229, 2013 WL 6188568 (Mo. banc Nov. 26, 2013), the Supreme Court rejected an argument that it had implicitly overruled a prior decision, *sub silentio*, stating:

> Generally, this Court presumes, absent a contrary showing, that an opinion of this Court has not been overruled *sub silentio*. *See Badahman v. Catering St. Louis*, 395 S.W.3d 29, 37 n. 10 (Mo. banc 2013). *Sub silentio* is defined as "without notice being taken or without making a particular point of the matter in question." *Webster's Third New*

---

[7] *Frazee*'s assessment of legislative intent is notable:

> In the final analysis we are seeking here to determine the legislative intent. We must consider not only the fact that our legislature has, in twice adding specific exceptions to the time limitation of our death act, failed to enact any exception which would extend the time by reason of such conduct as is shown here, but also the fact that § 516.300, which has at all times remained in force, specifically provides that the general statutes of limitations shall not extend 'to any action * * * otherwise limited by any statute.' We must further consider the various judicial constructions of these statutes, which have entered into and become part of them. We must and do hold that the limitation of one year specifically provided in § 537.100 was not tolled or the period extended by the defendant's conduct, even attributing to it the full effect of plaintiffs' contentions.

*Id.* We observe that in the many years since the *Frazee* decision, the legislature still has not acted to create an exception to the special statute of limitation in § 537.100 for fraud or concealment, though it has amended the statute for other purposes, including lengthening the limitation period.

13

16

*International Dictionary* 2279 (1976). "If the majority chooses to overrule [a case] it is far preferable to do so by the front door of reason rather than the amorphous back door of *sub silentio*." *Keller v. Marion Cty. Ambulance Distr.*, 820 S.W.2d 301, 308 (Mo. banc 1991) (Holstein, J., dissenting). This presumption can be traced, at least in part, to the doctrine of *stare decisis*. "The doctrine of *stare decisis*—to adhere to decided cases—promotes stability in the law by encouraging courts to adhere to precedents." *Med. Shoppe Int'l, Inc. v. Dir. Of Revenue*, 156 S.W.3d 333, 334–35 (Mo. banc 2005). Under the doctrine of *stare decisis*, decisions of this Court should not be lightly overruled, especially when "the opinion has remained unchanged for many years." *Sw. Bell Yellow Pages, Inc. v. Dir. Of Revenue*, 94 S.W.3d 388, 391 (Mo. banc 2002).

Importantly, "[t]he maxim of stare decisis applies only to decisions on points arising and decided in causes" and does not extend to mere implications from issues actually decided. *Broadwater v. Wabash R. Co.*, 212 Mo. 437, 110 S.W. 1084, 1086 (Mo.1908). To assert that a decision has been overruled *sub silentio* is the same as to assert that the decision has been overruled by implication. This Court's presumption against *sub silentio* holdings, therefore, is based not only on the general preference that precedent be adhered to and decisions be expressly overruled, but also because the implicit nature of a *sub silentio* holding has no *stare decisis* effect and is not binding on future decisions of this Court.

*Id.* at *8-*9. As this passage clearly shows, our high court continues to maintain a presumption against the *sub silentio* overruling of a prior case. This presumption requires us to conclude that ***O'Grady*** did not overrule or supersede ***Frazee***, implicitly or otherwise, inasmuch as there is no showing to the contrary. This conclusion is reinforced by the fact that the two cases address very different legal questions.

Turning to Relator's petition, we discern no meaningful distinction between ***Frazee*** and this case in terms of the legal issues presented. In ***Frazee***, the plaintiffs alleged they were unable to discover the identity of the defendant until more than one year after the decedents' deaths due to the defendant's concealment of his identity. Our supreme court concluded that the Frazees' allegations of concealment, even if true, did not delay the accrual of their cause of action for wrongful death beyond the decedents' deaths and did not toll the period of limitation set forth in § 537.100. 314 S.W.2d at 920-

14

17

Electronically Filed - SUPREME COURT OF MISSOURI - February 26, 2014 - 05:24 PM

21. Here, Irwin alleges that she could not ascertain that Relator and Maples were involved in or responsible for Belinda's death within the three-year period after her death because the pair concealed their involvement. As in *Frazee*, the legal issues presented in this case are whether Relator's and Maples's efforts to conceal their involvement (assuming the allegations in Irwin's petitions to be true) effectively either delayed the accrual of their cause of action for Belinda's wrongful death or tolled the three-year limitation period contained in § 537.100. In our view, *Frazee* answers these questions in the negative.

"[W]e are constitutionally bound to follow the most recent controlling decision of the Supreme Court of Missouri." **Board of Dirs. of Richland Township v. Kenoma, LLC**, 284 S.W.3d 672, 677 (Mo. App. S.D. 2009). Having found that *O'Grady* did not supersede or overrule *Frazee*, we conclude that *Frazee* is the last controlling decision of our supreme court on the issues presented in this case. In accordance with *Frazee*, we find that even if Irwin were successful in proving her allegations of misconduct and concealment by Relator and Maples, these facts would not change the date the cause of action for Belinda's wrongful death accrued, and they would not operate to toll the period of limitation set forth in § 537.100. As such, we are compelled to find that Irwin's claim is barred by § 537.100 as it was brought more than three years after Belinda's death.

We therefore enter a permanent writ that prohibits Respondent from taking any further action on Irwin's claim against Relator in Jasper County Case No. 13AP-CC00037 other than to dismiss the same for the reason that the claim is time-barred by § 537.100.

15

18



# SUPREME COURT OF MISSOURI
# en banc

STATE ex rel. BOB T. BEISLY II,          )
                                          )
           Relator,                       )
                                          )
v.                                        )          No. SC94030
                                          )
THE HONORABLE TIMOTHY PERIGO,             )
                                          )
           Respondent.                    )

## DISSENTING OPINION

While I am deeply troubled by the tragedy that occurred in this case, I must respectfully dissent. In overruling the defendant's motion to dismiss this case, the trial court found that it was "shocking to the conscience" to construe the wrongful death statutes in a manner that would allow a wrongdoer to escape civil liability merely by successfully concealing his identity until the limitations period ran. While I agree that the outcome I would reach here is regrettable, it is shocking to the legal conscience for this Court to use its equity powers to countermand the clear dictates of the legislature. I write separately because, as this Court stated in *Boland v. Saint Luke's Health Sys., Inc.*, the doctrine of equitable estoppel may not be used to preclude application of section

537.100,[1] Missouri's special statute of limitations for wrongful death claims. *See ---* S.W.3d --- (No. SC93906) (Mo. banc 2015).

I agree with the majority that, because wrongful death is a purely statutory creature, the statute of limitations provisions that apply to claims generally are not applicable to a wrongful death claim. The fraudulent concealment exception set out in section 516.280 may not be applied to a wrongful death claim because such claims are governed by the special statute of limitations set out in section 537.100. Section 537.100 does not contain its own fraudulent concealment exception, and neither of its two tolling exceptions apply to this case.

I also agree with the majority that this Court's decision in *Frazee v. Partney*, 314 S.W.2d 915 (Mo. 1958) remains good law and is directly on point here. That decision found that a wrongful death claim accrues when the defendant's liability is complete (i.e., at death) and there exists some person to whom the defendant is liable. *Id.* at 920-21. The majority reaffirms that holding and rightly finds that in this case, as in *Frazee*, the plaintiff's cause of action accrued at the decedent's death, regardless of the fact that in both cases the identity of the defendant was unknown at the time of death.

*Frazee*, however, also held that:

> [W]here a statute of limitations is a special one, not included in the general chapter on limitations, the running thereof cannot be tolled because of fraud, concealment or any other reason not provided in the statute itself. . . . No other exceptions whatever are engrafted on that statute, and it is not the duty or the right of the courts to write new provisions into the statute.

---

[1] Statutory references are to RSMo 2000 if not otherwise indicated.

*Id.* at 919 (internal citations omitted). It is here that I respectfully disagree with the majority opinion insofar as it disregards this aspect of *Frazee* by holding that equitable estoppel bars the defendant from asserting the statute of limitations as an affirmative defense due to acts of fraudulent concealment. The majority claims that this holding does not violate *Frazee* because:

> tolling and accrual are likewise distinct from the application of fraudulent concealment as a form of equitable estoppel, which forecloses a defendant from pleading the statute of limitations as a defense. The application of this doctrine does nothing to engraft a tolling mechanism or otherwise extend the statute of limitations beyond what is stated expressly in the statute.[2]

As was held in *Boland*, this is a distinction without a real difference. While it is true that equitable estoppel was not before this Court in *Frazee*, the phrase "[n]o other exceptions whatever are engrafted on that statute" must mean something. *Frazee* at 919. Despite its discussion of the difference between equitable tolling and equitable estoppel, the majority neglects to mention that, in *Frazee*, this Court clearly stated that "[a] special statute of limitations must carry its own exceptions and we may not engraft others upon it." *Id.* at 919. And yet the majority unmistakably holds that equitable estoppel is now a *de facto* exception to section 537.100.[3] There is no way to reconcile this with *Frazee*, and the majority effectively overrules that opinion of this Court.

---

[2] In support of its point, the majority cites numerous decisions from foreign jurisdictions and faults the relator here for failing to address these cases. However, because statutes of limitations are purely statutory, decisions from other states are irrelevant to the interpretation and application of section 537.100.

[3] The majority opinion premises its discussion of equitable estoppel on *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 235 (1959), in which the Supreme Court of the United States held that equitable estoppel could toll the limitations period for a claim under the Federal Employers' Liability Act. Yet *Glus* was a federal case interpreting a federal statute. As such, it is not strictly

As this Court stated in *Boland*, the legislative history of section 537.100 is instructive. Prior to *Frazee*, the General Assembly twice amended section 537.100 to add a tolling provision for absconders and a one year savings provision to allow a new suit following dismissal without prejudice. 1905 Mo. Laws 137 (codified at section 2868, RSMo 1906); 1909 Mo. Laws 463 (codified at section 5429, RSMo 1909). After *Frazee* the General Assembly twice more amended section 537.100, first enlarging the limitations period from one year to two in 1967 and then to three years in 1979. 1967 Mo. Laws 665; 1979 Mo. Laws 631. Yet the legislature has never seen fit to add a fraudulent concealment provision to section 537.100, despite the fact that such a provision, currently codified at section 516.280, has existed in Missouri for over 150 years. *See* Limitation: art. 8, sec. 3, RSMo 1836.

This Court is bound to consider these intentional legislative choices and refrain from judicially amending section 537.100 even when, as here, the result is severe for the plaintiff. It is the job of the legislature, not this Court, to address exceptions to a special statute of limitations. And in the past when this Court has reached other harsh results in interpreting statutes of limitations, the General Assembly has acted to ameliorate those

---

relevant to the interpretation of section 537.100. Moreover, in applying the doctrine of estoppel, the Court in *Glus* noted that:

> We have been shown nothing in the language or history of the Federal Employers' Liability Act to indicate that this principle of law, older than the country itself, was not to apply in suits arising under that statute. Nor has counsel made any convincing arguments which might lead us to make an exception to the doctrine of estoppel in this case.

*Id.* at 234. Here, however, the legislative history of section 537.100 indicates the General Assembly did not intend fraudulent concealment as an exception to the wrongful death limitations period. Further, legislative deference as well as adherence to this Court's decision in *Frazee* are compelling arguments to decline to exercise equity powers in this case.

4

results.  In *Laughlin v. Forgrave*, 432 S.W.2d 308 (Mo. banc 1968), this Court held that the plaintiff's medical malpractice action was barred by the statute of limitations despite the claim that the injury – a foreign object left in the plaintiff's back – could not have been discovered within the limitations period.  *Id.* at 313.  In 1976, the General Assembly amended the medical malpractice statute of limitations to add a discovery exception for claims where the injury was a foreign object left inside the body.  1976 Mo. Laws 767 (codified as amended at section 516.105, RSMo 2000).  In *Weiss v. Rojanasathit*, 975 S.W.2d 113, 120 (Mo. banc 1998), this Court again strictly construed the medical malpractice statute of limitations and held that the discovery exception added in *Laughlin* was inapplicable to the plaintiff's claim of failure to notify of test results that would have revealed the presence of cervical cancer.[4]  During the next legislative session, the General Assembly amended the medical malpractice statute of limitations and added a discovery exception for cases where the act of negligence is "negligent failure to inform the patient of the results of medical tests."  1999 Mo. Laws 329.

In rejecting the plaintiff's argument for an extension of the discovery rule, this Court stated in *Weiss* that:

> This argument is appealing and has some force, so far as justice is concerned; in that respect the conclusion we reach is distasteful to us. But, the legislative branch of the government has determined the policy of the state and clearly fixed the time when the limitation period begins to run against actions for malpractice. This argument addressed to the court properly should be addressed to the General Assembly. Our function is to interpret the law; it is not to disregard the law as written by the General Assembly.

---

[4] Notably, in *Weiss*, this Court considered and rejected the plaintiff's theory that equitable estoppel should preclude the defendant from asserting the statute of limitations.  *Id.* at 120.

5

*Weiss*, 975 S.W.2d at 121 (quoting *Laughlin*, 432 S.W.2d at 314).  These cases reflect the

overarching precedent that the legislature is in the best position to set Missouri policy on

this issue.   *See Hunter v. Hunter*, 237 S.W.2d 100, 104 (Mo. 1951) (exceptions to

statutes of limitations are matters of public policy for the General Assembly; exceptions

are to be strictly construed and not enlarged by courts upon considerations of hardship.).[5]

This result does not aim to reward fraudulent concealment.  Rather, it merely recognizes

that it is this Court's role to interpret the law, not rewrite it.  In that regard, I believe the

plaintiff's argument in this case is one better made to the General Assembly.

Finally, and while I express no opinion about the doctrine of equitable estoppel's

application in other contexts, it is my view that this Court should not deploy discretionary

equitable remedies in a manner contrary to a clear mandate of the legislature.   As this

Court noted long ago:

> Equity Courts may not disregard a statutory provision, for where the
> Legislature has enacted a statute which governs and determines the rights
> of the parties under stated circumstances, equity courts equally with courts
> of law are bound thereby.  *Equity follows the law more circumspectly in the
> interpretation and application of statute law than otherwise*.

*Milgram v. Jiffy Equip. Co.*, 247 S.W.2d 668, 676-77 (Mo. 1952) (emphasis added)

(internal citations omitted).  The notion that all equitable maxims become a part of all

---

[5] There is considerable historical precedent for this view:
> It was at one time held in regard to these [statutes of limitations], that where by
> reason of the defendant's fraud the existence of a cause of action was concealed,
> it would furnish an equitable exception to the express language of the statute.
> [B]ut the idea that implied and equitable exceptions, which the Legislature has not
> made, are to be engrafted by the courts on a statute of limitations is now generally
> abandoned.

THEODORE SEDGWICK, A TREATISE ON THE RULES WHICH GOVERN THE INTERPRETATION AND
CONSTRUCTION OF STATUTORY AND CONSTITUTIONAL LAW, 277 (Pomeroy, ed., 2d ed. 1874,
reprint 2012).

statutory schemes, unless expressly written out of the law by the legislature merely invites future reexamination by courts of otherwise settled areas of statutory interpretation.

In conclusion, despite the fact that the outcome is "shocking to the conscience," I would hold that the trial court abused its discretion in overruling the relator's motion to dismiss the plaintiff's wrongful death suit.

_____

Mary R. Russell, Judge